# TERRITORY OF HAWAII *v.* SUPERVISORS OF THE COUNTY OF OAHU.

### Appeal from Circuit Judge, First Circuit.

### Submitted December 30, 1903.   Decided January 13, 1904.

### Frear, C.J., Galbraith and Perry, JJ.

When the valid and invalid parts of an act are so mutually connected with or dependent on each other as to warrant a belief that the Legislature intended them as a whole and that, if the invalid parts could not be carried into effect, the Legislature would not pass the valid parts independently, the whole must fall.

So much of Act 31, Laws of 1903, known as the County Act, as provides new features in Territorial taxation not incidental to county organization or government, is void under the provision of Section 45 of the Organic Act, "that each law shall embrace but one subject, which shall be expressed in its title."

Said void portion is such an essential feature as to vitiate the whole Act.

### OPINION OF THE COURT BY FREAR, C.J.

This is an appeal from a decree dismissing a petition for a writ of *quo warranto* brought by the Territory for the purpose of inquiring by what authority seven named respondents claim to hold office as Supervisors of the County of Oahu. The real object of the proceeding is to test the validity of Act 31 of the Laws of 1903, known as the County Act, most of the provisions of which were to take effect by its terms on January 4, 1904.

If the Act is void, the respondents do not lawfully hold the offices which they claim to hold solely under that Act.

No question has been raised by the respondents as to procedure or jurisdiction, but on the contrary they seem equally desirous with the petitioner to have the case decided on the merits.

The arguments against the validity of the Act are in general as follows:

1. That the Act was never passed by the House of Representatives as required by the provision in Section 46 of the Organic Act, that in order to become a law the final passage of a bill in each house shall be by a majority vote of all the members to which such house is entitled, taken by ayes and noes and entered on the journal, in that, as contended, the House journal shows that the final action in that body was the adoption of the report of the conference committee which recommended certain amendments and does not show that the bill as so amended was passed at all by the House.

2. That the Act makes the County Board of Supervisors an elective body, contrary to the provision in Section 80 of the Organic Act, that the Governor shall appoint, with the advice

and consent of the Senate, certain specified officers and boards and "any other boards of a public character that may be created by law."

3. That the Act creates a Territorial Board of Equalization consisting of the Secretary, Treasurer and Auditor of the Territory, not appointed by the Governor, with the consent of the Senate, at all as to one of its members, the Secretary, nor appointed by him as members of the board as to any of its members, contrary to said Section 80 of the Organic Act.

4. That the Act requires the transfer to the counties, to be controlled by various elected county officials, of much public property that was ceded by the Republic of Hawaii to the United States by the Joint Resolution of Annexation and was by Section 91 of the Organic Act placed by the United States in the possession of the Territory of Hawaii, to be controlled, as contended, by various appointive Territorial officials, "until otherwise provided for by Congress or taken for the uses and purposes of the United States by direction of the President or of the Governor of Hawaii."

5. That the Act practically abolishes the offices of Superintendent of Public Works and High Sheriff by transferring most of their powers and duties to other officers, contrary to Section 75 of the Organic Act, which provides "that there shall be a Superintendent of Public Works, who shall have" certain enumerated powers and duties, and Section 79 which contains a similar provision in regard to the High Sheriff.

6. That the whole Act is void because it contains two subjects, one in relation to county government and one in relation to Territorial works and institutions and because, as contended, the title of the Act is likewise correspondingly double, in contravention of Section 45 of the Organic Act, which provides "that each law shall embrace but one subject which shall be expressed in its title."

7. That so many and such important portions of the Act are void and ineffective that none of it can stand.

We will assume for the purposes of this case that the first six

of these arguments are unsound, and base our decision on the seventh alone.

In support of this argument a number of provisions in the Act were pointed out by counsel as being, according to their contention, void or ineffective in whole or in part for one reason or another. Without professing on the one hand to enumerate fully or on the other to confine ourselves strictly to the provisions instanced by counsel or the reasons advanced by them in each instance, the general line of thought on this branch of the case may be illustrated by the following statement of arguments: that certain provisions are void or ineffective in whole or in part because they are made to depend upon laws which were assumed to be still in force but which had in fact been repealed (as, for instance, Sections 454, 455, relating to contested elections, as shown by *In re Election Contest, ante* 323); or because they purport to transfer to certain county or Territorial officers powers and duties which were assumed to have been in certain other officers, whose offices, however, had been abolished by the Organic Act or whose duties had been transferred either by the Organic Act or by our own laws to other officers (as, for instance, Sections 365, 394, which purport to transfer to other officers the powers and duties of the Minister of the Interior relating to medicine, surgery, pharmacy, dentistry and prisons); or because they relate to purely Territorial matters in contravention of the provision of the Organic Act that each law shall embrace but one subject which shall be expressed in its title, (as, for instance, Sections 380-391, 483-487, 494, relating to the Territorial Board of Public Institutions, as shown in *Dole v. Cooper, ante* 297); or because of two or more of the foregoing reasons (as, for instance, Sections 395-401, 495, 496-501, which place the Territorial penitentiary in the control of the Territorial Board of Public Institutions and provide for a transfer of powers and duties from the Minister of the Interior—not to go into the question whether the subject of a Territorial penitentiary itself could properly be included in the Act or how far the matters of prisons, criminal procedure, sentences, etc., in general might be affected by the failure of the provisions in question);

or because they purport to alter laws that cannot be altered at all by the Territorial Legislature, the power to alter which is reserved exclusively to Congress by the Organic Act (as, for instance, Sections 171-172, 450-451. relating to the settlement of boundaries and the returns, canvass and certificates of election in the case of Territorial Senators and Representatives—not to consider whether the latter subject could properly be included in a county act at all); or because they violate provisions of the Organic Act or other Acts of Congress relating to the Territories prohibiting special legislation in regard to counties, as, for instance, the proviso of Section 1 relating to the County of Kalawao, and Section 14 relating to the Supervisors of the County of Oahu.

But we will assume for the purposes of this case either that all such provisions are valid and effective, except so far as held otherwise in the cases above mentioned, or else that, if invalid or ineffective, they may, important though some of them are, all fall without causing the Act as a whole to fall.

There is, however, one subject that, in our opinion, is improperly included in the Act, without the provisions in regard to which it cannot be presumed that the Legislature would have passed the rest of the Act. That is the subject of Territorial taxation—the very means upon which the Territorial government depends for its life. We will assume that the Territorial Board of Equalization might properly be constituted as it is in terms by this Act, notwithstanding the provisions of Section 80 of the Organic Act. Still the subject of Territorial taxation is one that, like the subject of the Territorial Board of Public Institutions, cannot be included in the Act, in view of the provisions of Section 45 of the Organic Act relating to titles of laws.

The Act makes radical changes in the system of Territorial taxation. It may almost be said to provide a new system. Among other things, it provides for the equalization of valuations of real property among the several counties, as far as regards the Territorial tax, by a purely Territorial Board. This board also is required to determine the rate of the Territorial tax upon both real and personal property, and in case of its

failure to do so, the rate is fixed at five mills on the dollar. Sections 186, 221, 222.

The Act is entitled "An Act Providing for the Organization and Government of Counties and Districts, and the Management and Control of Public Works and Public Institutions therein." An act relating to taxation could cover both Territorial and county taxation. Whether an act relating to Territorial government could properly cover county government, or an act relating to Territorial taxation could properly cover county taxation might be a question—although under an act which according to its title related to state and county revenues, but which contained a section on municipal revenues, the Supreme Court of Tennessee held not only that section but the entire act void. See *Bugher v. Prescott,* 23 Fed. 20. But an act relating to county taxation or county government could not cover Territorial taxation. No doubt a number of provisions in this Act could be sustained, not as parts of the Territorial system of taxation but as incidental to county government, although they relate more or less to what were previously parts of the Territorial system of taxation. An act relating to counties created in a fully organized Territory with a centralized government would naturally and probably necessarily contain some such provisions. Lines of demarkation and transfers would have to be made and this could be done by inclusion, exclusion, amendment or repeal so far as necessary for the purposes of providing for the organization and government of counties. But this Act goes much further than this. It provides for most important changes in the system of Territorial taxation, and that, too, with nothing in the title of the Act to indicate this.

What is the result? The provisions relating to county and territorial taxation, covering nearly a fourth of the entire Act, are interwoven, and were intended to be parts of a general scheme. If the part relating to county taxation would have to fall with the part relating to Territorial taxation, the counties themselves would be without the greater portion of their contemplated means of subsistence and the entire act would nec-

essarily fall. If the part relating to Territorial taxation could be separated from the part relating to county taxation, then, if the rest of the Act could stand, it would be only on the theory that, as to Territorial taxation, previously existing laws would remain in force. There would then be two systems of taxation, each complete in itself, with two sets of officers and other machinery from top or bottom, with double expenses, two returns, assessments, *etc.,* to be made in the case of each tax-payer, the possibility of two valuations by different assessors or boards and two appeals, *etc.,* in each instance, *etc., etc.* The Territory would also have to collect most of the taxes as fixed by previous laws, sufficient perhaps to support the entire government as it was previously, notwithstanding that the greater part of the expenses were to be hereafter borne by the counties. The counties would also have to collect the rate which this Act purports to authorize. The people would then be taxed much more heavily than was contemplated or is necessary. In view of the extent to which the intention of the Legislature would be frustrated and inconvenience and hardship would result in case the rest of this Act were allowed to stand without the part relating to new features in Territorial taxation, it cannot be supposed that the Legislature would have passed the rest of the Act in its present shape. For the court to sustain the rest of the Act under the circumstances would be to assume legislative power.

We fully realize that, as we have held in the past, the organic provision relating to titles of laws should be liberally construed, and the court should sustain an act of the Legislature, if possible. But the superior law must control in a clear case of conflict. The court cannot, nor can a large majority any more than a small majority of the Legislature, override the organic law, however much any particular law or form of law may be desired.

In our opinion the Act in question is void, the respondents are not entitled to the offices which they claim, the decree appealed from is reversed and an appropriate decree in conformity with this opinion may be entered in this court.

*J. A. Matthewman* and *C. R. Hemenway* for the petitioner.

*Kinney, McClanahan & Cooper* and *S. H. Derby,* counsel in
another case, argued on the same side, by permission.

*A. S. Hartwell* and *W. T. Rawlins* for the respondents.