Hillsborough,
No. 6065.

JOHN N. BEDNAR

*v.*

JOHN W. KING, GOVERNOR.

December 1, 1970.

*Leonard, Leonard, Prolman & Prunier* and *Edward A. Jordan* ( *Mr. David M. Prolman* orally ), for the plaintiff.

*Warren B. Rudman,* Attorney General, and *W. Michael Dunn,* Assistant Attorney General ( *Mr. Dunn* orally ), for the defendant.

*Henry C. Newell,* as amicus curiae pro se.

*Laurier Lamontagne* and certain other members of the Senate, as amici curiae, pro se.

*Romeo R. deBlois* and certain other members of the House of Representatives, as amici curiae, pro se.

*Wadleigh, Starr, Peters, Dunn & Kohls* and *William C. Tucker* ( *Mr. Tucker* orally ), for S.P.A.C.E. as amicus curiae.

LAMPRON, J. Petition for a declaratory judgment that a proposed amendment to our New Hampshire Constitution submitted

as Question No. 7 at the 1968 biennial election was not duly adopted because of certain irregularities in its proposal by the Senate and House of Representatives in violation of article 100, part II, of the Constitution. The question appeared on the ballot as follows: "Do you favor amending the Constitution so that the Legislature may provide for assessment of any class of real estate at valuations based upon the current use thereof?" The parties arrived at an agreed statement of facts and all questions of law raised by the petition were reserved and transferred without ruling by *Flynn,* J.

New Hampshire Constitution, part II, article 100, provides in part as follows:

"Alternate Methods of Proposing Amendments. Amendments to this constitution may be proposed by the general court [as follows]:

"( a ) The senate and house of representatives, voting separately, may propose amendments by a three-fifths vote of the entire membership of each house at any session. "

It is well established law that such a constitutional provision prescribing an exact method for the proposal of a constitutional amendment by the legislature is mandatory and must be complied with. *Opinion of the Justices,* 102 N.H. 230, 153 A.2d 409 ( 1959 ), *Sears* v. *Treasurer and Receiver Gen.* 327 Mass. 310, 320-21, 98 N.E.2d 621, 629 ( 1951 ); 16 C.J.S. Constitutional Law *s.* 9, at 48-51 ( 1956 ); Mason, Manual of Legislative Procedure *s.* 7( 1 ) ( 1953 ). Consequently the absence of "a three-fifths vote of the entire membership of each house " on the proposal of the constitutional amendment in question would render it and its subsequent approval by the required number of voters null and void. *Opinion of the Justices supra;* 82 C.J.S. Statutes *s.* 36 ( 1953 ); Mason, *Id. s.* 7( 2 ).

However, each branch of the legislature is granted the constitutional right to "settle " or "determine " its own rules of proceedings. N.H. CONST., pt. II, arts. 22 and 37; *Opinion of the Court,* 63 N.H. 625 ( 1885 ); *Opinion of the Justices,* 87 N.H. 489, 177 A. 655 ( 1935 ); 81 C.J.S. States *s.* 39 ( 1953 ). *See Opinion of the Justices,* 101 N.H. 536, 133 A.2d 506 ( 1957 ). As article 100 of the Constitution merely requires that the proposal of a constitutional amendment be effectuated by a "three-fifths vote of the entire membership of each house at any session, " the procedure by which the result is obtained in each house is to be determined by its own rules of proceedings. *Kay*

*Jewelry Co.* v. *Board of Registration in Optometry,* 305 Mass. 581, 585, 27 N.E.2d 1, 3 ( 1940 ); 50 Am. Jur. Statutes *s.* 83 ( 1944 ); Mason, Manual of Legislative Procedure *ss.* 19, 20 ( 1953 ). Furthermore violation of its own rules of procedure by a branch of the legislature in the process of arriving at the constitutionally required " three-fifths vote " will not impair the validity of the proposed amendment. *Bane* v. *Superintendent of Boston State Hospital,* 350 Mass. 637, 216 N.E.2d 111 ( 1966 ); 16 C.J.S. Constitutional Law *s.* 152 ( 1956 ); Mason, Manual of Legislative Procedure *s.* 24 ( 1953 ).

The irregularities in the Senate complained of are mainly that no hearing was held on the amendment proposal finally adopted after it had been separated from the original resolution; that the committee report of such action had not been previously advertised in the Journal; and that a material change had been made in the body which was not properly reflected in the original title which was retained. In view of the prevailing law detailed above, it would serve no useful purpose to analyse and discuss each claim separately. Suffice to say that we hold that none of the violations separately or as a whole can render the Senate vote invalid when the Journal shows that the proposal received the constitutionally required " three-fifths vote " three different times in the course of the proceedings.

Of the multiple irregularities alleged to have occurred in the House, violation of joint rule 20 of the Senate and House is the only one requiring comment. This rule reads in part as follows: " 20. Concurrent Resolutions Proposing Constitutional Amendments . . . . All such concurrent resolutions shall be read a first and second time by title and referred to the appropriate standing committee for public hearing and report. Amendments to such a resolution shall be in order while the measure is still on second reading. On the question of ordering such a resolution to third reading and final passage, the President and Speaker shall require a division vote, unless a roll-call is duly requested under the rules and completed. "

When the question of ordering the resolution to a third reading was to be considered, the Speaker ruled, on a request by a member of the House, that a division vote was required only on that question. No appeal was taken from this ruling as provided by House rules 2 and 12 which thereunder rendered the decision of the Speaker " conclusive. " Mason, Manual of Legislative Procedure *s.* 230 ( 1953 ). A logical argument can be

made for the procedure adopted in the Senate which could be labelled "Fail-Safe." However plaintiff admits in his brief that "it is common knowledge that the crucial vote on any bill comes at second reading, as no amendments can be made after this point." It is at a later point in the legislative proceedings, on the question of ordering the resolution to a third reading, that the Speaker asked for, and the House Journal records, a division vote on the concurrent resolution of 281 for and 2 against which exceeded the constitutionally required "three-fifths vote." N.H. Const., pt. II, art. 100(a). We hold that this division vote followed by a third reading and final passage, even though the latter was not on a division vote, constituted a valid adoption of the concurrent resolution by the House of Representatives.

Plaintiff also contends that Question No. 7 containing the proposed constitutional amendment was illegal and unconstitutional. He maintains that the "Voter's Guide," an official publication, and publicity generated by private individuals and organizations confused the voters as to the real purpose of the proposed amendment. This argument is to be resolved by a determination of what meaning under all the circumstances the words in the question submitted to the voters presumably had to the electorate. *Concrete Co.* v. *Rheaume Builders,* 101 N.H. 59, 60, 132 A.2d 133, 135 (1957). In so doing every reasonable presumption both of law and fact is to be indulged in favor of the validity of the amendment when it is attacked after its ratification by the people. *Opinion of the Justices,* 101 N.H. 541, 543, 133 A.2d 790, 792 (1957).

Plaintiff's main complaint about the "Voter's Guide" is that its explanation of the amendment was in terms of "land" or "real property" while the amendment itself used the words "real estate." This was not inaccurate or improper and could not have misled the voters. *French* v. *Lyme,* 77 N.H. 63, 64, 86 A. 823, 824 (1913); 1 Tiffany, Real Property *s.* 3 (3d ed. 1939). Assuming also that plaintiff correctly contends that the publicity emanating from private individuals or organizations overemphasized some aspects of what might result from adoption of the amendment and was silent as to other consequences, we find no basis therein to declare the adoption of the amendment illegal or void.

We hold that the constitutional amendment presented to the voters in the 1968 biennial election as Question No. 7 was lawfully proposed by the General Court and legally approved by

the voters in accordance with article 100, part II of our State Constitution.

*Petition dismissed.*

All concurred.