STATE OF HAWAII, Plaintiff-Appellant, Cross Appellee, *v.* JAMES KAHALEWAI, Defendant-Appellee, Cross Appellant

NO. 5685

OCTOBER 21, 1975

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR, JJ., AND SODETANI, CIRCUIT JUDGE, ASSIGNED BY REASON OF VACANCY

OPINION OF THE COURT BY OGATA, J.

Pursuant to HRS § 641-13(1), and H.R.Cr.P., Rule 37(e), the State has appealed from the order which dismissed a misdemeanor complaint against defendant with prejudice. Defendant has cross-appealed insofar as the trial court rejected the other grounds urged below in support of his motion to dismiss. We reverse the order which dismissed the complaint with prejudice, but otherwise affirm the trial court's disposition of defendant's motion to dismiss.

Defendant was charged with violating HRS § 712-1250(1)

(a),[1] Promoting Intoxicating Compounds (hereinafter referred to as Section 1250(1) (a) of the Hawaii Penal Code).[2] When he appeared for arraignment in the District Court of the First Circuit, State of Hawaii, on April 1, 1974, he demanded a jury trial. His case was thereafter committed to the Circuit Court of the First Circuit of the State of Hawaii for trial by jury. In that court, defendant filed on May 17, 1974, a motion to dismiss the complaint on the following separate grounds: (1) Section 1250(1) (a) of the Hawaii Penal Code infringes upon personal liberty unconstitutionally because it punishes actions and purposes not affecting the general welfare; (2) the terms "intoxication", "stupefaction", "depression", "giddiness", "irrational behavior", "changing", "distortion", "disturbing" as used in Section 1250(1) (a) of the Hawaii Penal Code are unconstitutionally vague; (3) Section 1250(1) (a) of the Hawaii Penal Code prohibits conduct which is protected by the state and federal constitutions; and (4) the enforcement of Section 1250(1) (a) of the Hawaii Penal Code against "sniffers" of paint and glue but not against all users of intoxicants is a violation of the equal protection clauses of the state and federal constitutions.

Section 1250(1) (a) of the Hawaii Penal Code provides:

"(1) A person commits the offense of promoting intoxicating compounds if he knowingly and unlawfully:

(a) Breathes, inhales, or drinks any compound, liquid, or chemical containing toluol, hexane, trichloroethylene, acetone, toluene, ethyl acetate, methyl ethyl ketone, trichloroethane, isopropanol, methyl isobutyl ketone, methyl cellosolve acetate, cyclohexanone, or any other substance for the purpose of inducing a condition of intoxication, stupefaction, depression, giddiness, paralysis or irrational behavior, or in any manner changing, distorting or disturbing the auditory, visual or mental processes."

---

[1] This part of this section was enacted by Act 9, S.L.H. 1972, as part of the Hawaii Penal Code. Act 9 in its entirety took effect on January 1, 1973. Although Act 9 has not yet been published in the supplement to HRS, this section will be designated as HRS § 712-1520.

[2] See Act 9, S.L.H. 1972.

Defendant was charged in the words of the statute as follows:

"You are hereby charged that on or about November 29, 1973, in the City and County of Honolulu, State of Hawaii, you did knowingly and unlawfully breathe, inhale, or drink any compound, liquid, or chemical containing toluol, hexane, trichloroethylene, acetone, toluene, ethyl acetate, methyl ethyl ketone, trichloroethane, isopropanol, methyl isobutyl ketone, methyl cellosolve acetate, cyclohexanone, or any other substance for the purpose of inducing a condition of intoxication, stupefaction, depression, giddiness, paralysis or irrational behavior, or in any manner changing, distorting or disturbing the auditory, visual or mental processes, thereby committing the offense of Promoting Intoxicating Compounds in violation of Section 1250 of the Hawaii Penal Code."

The court below granted defendant's motion to dismiss on the asserted ground that Section 1250(1) (a) of the Hawaii Penal Code, as written, prohibits conduct which is privileged by the federal and state constitutions, as well as conduct that is not privileged. The court then dismissed the complaint with prejudice.

Initially defendant contended that an individual's consumption of the compounds described in Section 1250(1)(a) of the Hawaii Penal Code cannot affect the public welfare, and, therefore, its restriction on consumption of those compounds is unconstitutional as beyond the police power of the legislature. Defendant relied primarily upon *State v. Cotton,* 55 Haw. 138, 516 P.2d 709 (1973), wherein we stated that the statutory requirement that motorcycle riders wear helmets was a proper exercise of the general police power, although we expressly limited our holding to that case.

In *State v. Baker,* 56 Haw. 271, 276, 535 P.2d 1394, 1397 (1975), we said with regard to the constitutional validity of Hawaii's marijuana law that:

"It is well settled that when a substance has been proscribed as harmful, the presumption of constitutionality applies although there are conflicting scientific

views as to its harmful effects.''

In this case the defendant did not dispute the fact that an individual is harmed by the inhalation of the specific substances mentioned in Section 1250(1) (a). Essentially, defendant contended that any physical injury to the individual resulting from the proscribed conduct can be of no concern to the public.[3] Neither the State nor defendant presented evidence below as to the effects on the individual of consumption of the compounds described in the above statute,[4] nor as to the possible effect on the public resulting from an individual's consumption of those substances.[5] In *State v. Kantner*, 53

---

[3] The defendant's argument was precisely the argument that was rejected in *State v. Cotton*, 55 Haw. 138, 516 P.2d 709 (1973), where Hawaii's motorcycle helmet law was upheld as a constitutional exercise of police power. In *State v. Cotton, supra,* the majority held that although the helmet law was directed primarily at protecting the individual from head injuries, the law also protected much broader social interests, specifically highway safety, the efficient allocation of medical resources, and the conservation of the state's welfare services.

[4] Although neither side presented evidence to the court below, both the State and defendant have referred us to *Louis J. Casarett, Robert B. Fisher, Neal E. Winn,* GUIDE TO THE PERPLEXED (1972). Defendant himself has cited the following quotations:

" 'Volatiles', . . . [a]lmost everything that is sprayed from a can or dries faster than water has *a potential for abuse.*" (Emphasis supplied.) *Id.* at 5.

"Although some of these substances [such as those described in § 1250] may have the same specific characteristics, virtually all of them are central nervous system depressants. The substances used may have specific toxic actions on organ systems, *producing damage to the liver* and/or kidney in chronic usage. Others (e.g. benzene) affect primarily the bone marrow. With most of the materials, *chronic use may result in damage to the central nervous system* manifest by change in learning capability, confusion and other similar signs." (Emphasis supplied.) *Id.* at 25.

If defendant or the State had proved these statements below, together with statistics of frequency of use, there may have been sufficient evidence to find that Section 1250(1) (a) of the Hawaii Penal Code is reasonably related to the public welfare, *i.e.,* that a "secondary harm" to the public as discussed in *State v. Cotton, supra,* would provide a rational basis for this statute.

[5] The strength of the presumption of constitutionality is based partially on the limitations of courts to fully investigate all rational bases for the exercise of police power. While a legislature is fully authorized to conduct complete hearings regarding the extent to which certain conduct affects the public safety and welfare, a court is limited in its review to facts shown by the record or facts susceptible to judicial notice. In the absence of the presumption, a court might declare a statute unconstitutional merely for the reason that the record of an individual case failed to disclose facts which show a substantial effect upon the public welfare. In view of the state of the record before us, we cannot assume that defendant's contention that an individual's consumption of the compounds described in Section 1250(1) (a) cannot

Haw. 327, 332, 493 P.2d 306, 309 (1972), the majority opinion held that "the absence of sound scientific data concerning the long-term effects of [the substance proscribed] renders appellants' burden [of showing Hawaii's marijuana law unconstitutional] insurmountable." And as emphatically demonstrated by our holding in *Baker*, we do not believe that the burden of proof is shifted to the State by the mere assertion that an individual's conduct has no effect on the public welfare. The degree of proof required to overcome the presumption of constitutionality has been stated by this court in *Bishop v. Mahiko*, 35 Haw. 608, 641 (1940):

> "Every enactment of the legislature carries a presumption of constitutional validity and should be upheld by the courts unless it has been shown to be, *beyond all reasonable doubt*, in violation of the Constitution. Moreover, the facts adduced to show unconstitutionality must be clear and convincing and must show beyond question that the legislature exceeded the limits marked by the Constitution." (Emphasis supplied.)

Therefore, since the defendant has fallen far short of meeting such a burden of proof, the presumption that the legislative enactment is a valid exercise of police power will prevail.

Next, defendant attempts to shift the burden of proof to the State by reading this statute, as did the court below, to say that a person commits the offense if he knowingly consumes ". . . any other substance for the purpose of inducing intoxication" for any of the other specified conditions. When so read, it is claimed that this portion of the code might prohibit the consumption of substances such as alcoholic beverages, tobacco, and even coffee which contains caffein.[6] Defendant

---

affect the public is true. We are aware, for example, of various reports which indicate a real relationship between the inhalation by individuals of the substances described in Section 1250(1) (a) and the safety of the public. See *Pierce v. Turner*, 276 F. Supp. 289 (C.D. Utah 1967), *aff'd*, 402 F.2d 109 (10th Cir. 1968), *cert. denied*, 394 U.S. 950 (1968); *People v. Anonymous*, 46 Misc.2d 786, 260 N.Y.S.2d 860 (1965); a juvenile court case noted in Comment, LSD-ITS EFFECT ON CRIMINAL RESPONSIBILITY, 17 DePaul L. Rev. 365, 371 (1968).

[6] Defendant offered to present evidence that these substances and others would induce intoxication or affect the auditory, visual, or mental processes. The trial court took judicial notice that alcoholic beverages are capable of inducing intoxication, and based his ruling upon that fact.

alleged (but he did not attempt to prove) that these substances are harmless and that therefore consumption of them is protected by the right of privacy arising from the state and federal constitutions.

Defendant cites no authority for the proposition that consumption of alcoholic beverages, tobacco and coffee falls within the "penumbra" of a fundamental freedom. As the opinion of this court stated in *State v. Kantner*, 53 Haw. 327, 333, 493 P.2d 306, 310 (1972):

> "[T]he test of whether an activity may be considered to rest under the 'penumbra' of a preferred freedom is that the activity in question must be essential, not merely desirable, for the exercise of the specifically enumerated rights."

And in *State v. Baker, supra*, we rejected the contention that Hawaii's right to privacy provision made an individual's use of every "food, beverage or substance that may be ingested" a fundamental right which would require a compelling state interest to justify state regulation. Therefore, we cannot agree with the defendant that consumption of compounds for the express purpose of becoming intoxicated is protected as a fundamental freedom and requires the state to show a compelling interest before its regulation can be valid. Consequently, even if this statute was intended to be construed broadly, the statute could not be overbroad by infringing a constitutionally protected right as to these substances. The issue of overbreadth simply does not arise in this case.

Defendant's argument of overbreadth is based upon his construction of Section 1250(1) (a) of the Hawaii Penal Code to include alcohol, tobacco, coffee and numerous other substances which could possibly affect a person's "mental processes." It appears to us that the legislature did not intend to include those substances within this statute's prohibition.[7]

---

[7] Section 1250(1) (a) of the Hawaii Penal Code is nearly identical to its predecessor, HRS § 328E-2 (1974 Supp.), the legislative history of which is set forth in Standing Committee Report No. 548-70 of the Committee on Judiciary of the House of Representatives. This report appears in House Journal, Regular Session 1970, on page 1067, and states in part:

"Your Committee, having considered whether intoxicating liquors fall within the general classification of 'any other substance for the purpose of inducing a

Under the defendant's interpretation, a person may be confused as to what substances are regulated by Section 1250(1) (a). This seems to have been the concern of the court below as appears from its query to the prosecutor: "How is a person to know?"

Because of the confusion generated by defendant's construction of Section 1250(1) (a), Hawaii Penal Code, we focus now upon the words of the statute to determine the substances to which it does apply. Gramatically, the specific terms, "toluol, hexane trichloroethylene, acetone, toluene, ethyl acetate, methyl ethyl ketone, trichloroethane, isopropanol, methyl isobutyl ketone, methyl collosolve acetate, (and) cyclohexanone" are all objects of the participle "containing." The general term "any other substance" follows those specific terms and is also an object of the participle "containing." The general term "any other substance" is not a phrase separate from the other objects of the participle "containing." Therefore, all the objects of that participle should be construed together.

We recently stated in *State v. Rackle*, 55 Haw. 531, 534, 523 P.2d 299, 302 (1974):

> "Where words of general description follow the enumeration of certain things, those words are restricted in their meaning to objects of like kind and character with those specified . . . . This is the rule of *ejusdem generis* often utilized by the courts in the construction of statutory law. This doctrine is especially applicable to penal statutes which must be strictly construed."

Applying this rule, we held in *Rackle* that the term "other deadly or dangerous weapon," as used in HRS § 134-51 (1973 Supp.), preceded by the terms "dirk, dagger, blackjack, slug [sic] shot, billy, metal knuckles, (and) pistol," included only instruments which were designed as offensive weapons and

---

condition of intoxication . . .' within the meaning of the bill, is satisfied that they do not, neither were they intended to, and, therefore, your Committee did not amend the bill so as to expressly exclude them."

The position of the Senate as expressed in Standing Committee Report No. 937-70, of the Committee on Youth Rights and Problems, as set forth in page 1430 of the Senate Journal, 1970 Regular Session, was similar to the House of Representatives.

therefore could not include a flaregun designed as an emergency signalling device. We subsequently applied the reasoning of *Rackle* to hold that a diver's knife is not a "dangerous weapon." *State v. Giltner*, 56 Haw. 374, 537 P.2d 14 (1975).

Applying the rule of *ejusdem generis* to Section 1250(1) (a), Hawaii Penal Code, we hold that the general term "any other substance" means any other substance *similar* to the enumerated specific compounds which immediately precede the general term. All of the specific terms stated in Section 1250(1) (a) describe various volatile organic liquid solvents commonly used, for example, in gasoline, glues, cleaning fluid, and various types of paint. None of the specifically defined substances is used as a food or beverage. For purposes of illustration, tricholoroethylene, acetone, and ethyl acetate are commonly used in varnish; toluol, toluene, acetate, and ethyl acetate are commonly used in lacquer; and, isopropanol and cyclohexanone are commonly used in shellac. See Robert H. Dreisbach, Handbook of Poisoning (4th ed. 1963); The Merck Index (8th ed. 1968). Defendant has made no contention that alcoholic beverages, tobacco, coffee or the other substances he has mentioned are volatile organic liquid solvents and we have found no authority to support such a contention. Therefore, since Section 1250(1) (a) as correctly interpreted applies only to the stated classification, we decline to hold that the substances mentioned by defendant are regulated by Section 1250(1) (a). And we concur with the court's holding in *People v. Orozco*, 266 Cal. App. 2d 507, 72 Cal. Rptr. 452 (1968), where that court was faced with an ordinance very similar to Section 1250(1) (a):

> "As so read, this section is 'sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties' (Connally v. General Construction Co., 269 U.S. 385, 391, 46 S. Ct. 126, 127, 70 L.Ed. 322, 328) and, therefore, meets the constitutional requirement of certainty." 72 Cal. Rptr. at 453-54.

Defendant objects to our use of the rule of *ejusdem generis* on the grounds that this is not a proper case for the application of rules of construction because the statute is clear and

unambiguous on its face. We reject such a contention because of the confusion generated by defendant's interpretation in light of Section 1250(1) (a)'s legislative history.

Defendant further contended in his motion to dismiss that Section 1250(1) (a) of the Hawaii Penal Code is selectively enforced against only some types of offenders; specifically only paint and glue "sniffers" as opposed to users of alcoholic beverages are charged with violating Section 1250(1) (a), Hawaii Penal Code. Defendant premised his argument wholly upon his own interpretation of that section that it applies to users of alcoholic beverages. As we have just declined to hold that Section 1250(1) (a) of the Hawaii Penal Code applies at all to the use of alcoholic beverages, defendant's equal protection argument is without merit.

Because the terms "intoxication", "stupefaction", "depression", "giddiness", "paralysis", "irrational", "changing", "distorting", "disturbing" and "mental processes" are not defined in the statute or code, defendant also contended that Section 1250(1) (a) of the Hawaii Penal Code does not give fair and reasonable notice to a person of what conduct is prohibited. Defendant has tried to embellish his argument by contending that the statute is directed wholly at prohibiting the conditions or states of being described in this part of the section. However, as stated in defendant's own brief, the statute punishes only the act of breathing, inhaling, or drinking substances for certain purposes. Defendant went on to claim that it is those certain purposes which are described in vague and ambiguous terms.

In *State v. Taylor*, 49 Haw. 624, 636-37, 425 P.2d 1014, 1022 (1967), we quoted with approval *Boyce Motor Lines v. United States*, 342 U.S. 337 (1952), and applied the following statement in upholding a Hawaii penal statute which prohibited the depositing of any goods, wares or merchandise, or any substance whatever upon the sidewalks of certain of our cities:

> "A criminal statute must be sufficiently definite to give notice of the required conduct to one who would avoid its penalties, and to guide the judge in its application and the lawyer in defending one charged with its

violation. But few words possess the precision of mathematical symbols, most statutes must deal with untold and unforeseen variations in factual situations, and the practical necessities of discharging the business of government inevitably limit the specificity with which legislators can spell out prohibitions. Consequently, no more than a reasonable degree of certainty can be demanded. Nor is it unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line.''

Section 1250(1) (a) of the Hawaii Penal Code does not prohibit mere use of the described compounds. Only breathing, inhaling or drinking of the described compounds with a specific intent constitutes what may be termed misuse, which the statute prohibits. When it enacted this law, the legislature went beyond using a single broad term to describe the variations in physiological condition which one who intentionally consumes those compounds may intend to achieve. We believe that the legislature went to great lengths to define the full range of conditions which a person could intend to achieve by inhaling, breathing or drinking particular compounds. Consequently, we hold that the terms complained of here by defendant, as used in Section 1250(1) (a), Hawaii Penal Code, provide a reasonable degree of certainty and are sufficiently definite to give a person of common intelligence notice of what conduct is proscribed.

Both the State and defendant have presented a separate point on this appeal: whether the complaint was sufficient to charge the defendant with a violation of Section 1250(1) (a) of the Hawaii Penal Code, since he was charged in the language of the statute. Defendant contends that the charge does not sufficiently inform him of the *nature* of the accusation against him. *Territory v. Henry*, 43 Haw. 54 (1958); *Territory v. Kanda*, 41 Haw. 591 (1957).

Generally, appellate courts will not consider questions which were not raised in the trial courts. *Territory v. Kelley*, 38 Haw. 433 (1949). Although this rule may be deviated from, if deviation is required to serve the ends of justice or to prevent the denial of fundamental rights, *State v. Bunn*, 50

Haw. 351, 440 P.2d 528 (1968), this exception to the general rule is inapplicable here. Since our holding will necessitate remanding this case, defendant will not be denied any fundamental rights because he will have the opportunity to address the question of sufficiency of the complaint to the lower court.

Reversed and remanded for further proceedings not inconsistent herewith.

*Dale Lee,* Deputy Prosecuting Attorney *(Charlotte E. Libman,* Deputy Prosecuting Attorney, on the briefs, *Maurice Sapienza,* Prosecuting Attorney, of counsel), for plaintiff-appellant, cross appellee.

*Simeon R. Acoba, Jr.,* for defendant-appellee, cross appellant.