WILLIAM SCHWAB, RICHARD "IKE" SUTTON, Plain-
    tiffs-Appellants, *v.* GEORGE R. ARIYOSHI, et al.,
    Defendants-Appellees, and WILLIAM S. RICHARD-
    SON, et al., Defendants

NO. 6179

MAY 11, 1977

RICHARDSON, C.J., KOBAYASHI, OGATA,
MENOR AND KIDWELL, JJ.

OPINION OF THE COURT BY OGATA, J.

Plaintiffs-appellants, William Schwab and Richard "Ike" Sutton (hereinafter appellants), brought suit as taxpayers, in their own behalf and on behalf of other taxpayers similarly situated, in the First Circuit Court, against defendants-appellees (hereinafter appellees) being various state officers in the

executive, judicial and legislative branches, in their individual capacities, seeking to halt the implementation of Parts II, III and IV of Act 58, S.L.H. 1975, on the grounds that it had been invalidly enacted in violation of the State Constitution and rules established by the senate and house of representatives of the legislature. The circuit court, in an order filed February 10, 1976, denied appellants' motion for partial summary judgment and granted appellees' motion for summary judgment.[1] Appellants assert that the court erred in entering this order, and urge that we declare parts of Act 58 invalid and remand this case to the trial court for a determination as to the remedy. We affirm.

Act 58 had been introduced in the senate of the eighth state legislature as S.B. 1645 on February 26, 1975. It was entitled "A Bill for an Act Making Appropriations for Salaries and Other Adjustments, Including Cost Items of Collective Bargaining Agreements Covering Public Employees and Officers." As originally introduced, the bill was intended to ratify the salary increases obtained for a group of public employees through collective bargaining agreements.[2] S.B. 1645 passed final reading in the house and senate on April 11, 1975, the last day of the 1975 regular legislative session. Although various amendments were made to the bill during its passage through the legislature, the title of the bill was not touched or amended. It was approved by the Governor as Act 58, on May 7, 1975, to be effective by its terms on July 1, 1975.

The act contains four parts. Part I mainly appropriated or authorized certain sums for the fiscal biennium 1975-1977, to fund "all collective bargaining cost items in the contracts negotiated with the exclusive bargaining representatives of

---

[1] Appellants also appeal from an order filed March 24, 1976, setting aside an entry of default and dismissing the complaint against the members of the Supreme Court of Hawaii and the circuit court judge who entered the orders appealed from.

[2] Standing Committee Report No. 569, dated March 12, 1975, from the Senate Committee on Ways and Means states: "The purpose of this bill is to appropriate funds to cover the collective bargaining cost items relating to the contract negotiated with the exclusive bargaining representative for bargaining unit 5 (teachers)." *Senate Journal, Regular Session 1975*, at p. 1048.

bargaining units 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, and 13, and salary increases and other adjustments for other officers and employees excluded from bargaining units 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, and 13.'' Part II amended several relevant sections of the Hawaii Revised Statutes to adjust the maximum salary limits set for certain officers and staff members in the executive branch, namely, the governor, lieutenant governor, department heads and executive officers, the first and second assistants to department heads, officers whose salaries are set by statute, and substitute teachers. Part III amended other relevant sections of the Hawaii Revised Statutes to effect adjustments in salaries for officers in the judicial branch: the district family judges, the administrative director, supreme court justices, circuit court judges, and district judges. Part IV amended the relevant sections of the Hawaii Revised Statutes to adjust the salaries for certain legislative officers: the revisor of statutes, auditor, director of the legislative reference bureau, and the ombudsman and his staff, including his first assistant. Act 58 was an enactment to adjust the salaries of all state officers and employees, including those covered under collective bargaining agreements.

Shortly after approval of this measure by the Governor, appellants brought suit in the First Circuit Court, raising the following questions: 1) whether the title and body of Act 58 are in violation of Article III, Section 15 of the Hawaii Constitution which provides, in part, that "[e]ach law shall embrace but one subject, which shall be expressed in its title''; 2) whether the act is defective because it did not permit the Governor to exercise his item veto power, as outlined in Article III, Section 17 of the State Constitution; and 3) whether the act is void because of alleged violations of senate and house rules in the course of its passage. The complaint asked that the defendant Comptroller be permanently enjoined from making payments pursuant to Act 58 and that all appellees be required to repay amounts paid them pursuant to the act. Named in their individual capacities as appellees in the suit were George R. Ariyoshi, the Governor, Nelson K. Doi, Lieutenant Governor, and Hideo Murakami,

Comptroller of the State of Hawaii, and John and Mary Does 1-200. Each of the John and Mary Does 1-200 was later replaced by his or her proper individual name, in the amended complaint, as the specific state official who would receive pay increases under Parts II, III and IV of the Act.

After the circuit court granted appellees' motion for summary judgment, appellants filed notice of appeal, and further moved to disqualify all members of this Court from hearing the appeal. The motion to disqualify was based on HRS § 601-7(a) (1975 Supp.), which compels disqualification in cases where a judge has a pecuniary interest. In *Schwab v. Ariyoshi*, 57 Haw. 348, 555 P.2d 1329 (1976), we held that HRS § 601-7(a) (1975 Supp.) is not applicable where there is no statute providing any means of replacing a justice who would otherwise be disqualified to hear an appeal and "that the rule of necessity requires that the members of this court hear and determine this appeal." 57 Haw. at 353, 555 P.2d at 1331 (1976).

Since this is an appeal from an order entered by the court in summary judgment proceedings under HRCP Rule 56(c), we must determine whether any genuine issue as to a material fact was raised and whether the appellees were entitled to judgment as a matter of law. *Technicolor, Inc. v. Traeger*, 57 Haw. 113, 551 P.2d 163 (1976); *Abraham v. Onorato Garages*, 50 Haw. 628, 446 P.2d 821 (1968); *Richards v. Midkiff*, 48 Haw. 32, 39, 396 P.2d 49, 54 (1964). The inferences to be drawn from the underlying facts alleged in the affidavits and exhibits considered by the court in making its determination must be viewed in the light most favorable to the parties opposing the motion. *Technicolor, Inc. v. Traeger, supra; Abraham v. Onorato Garages, supra*. In the case last cited we said in 50 Haw. at 631-32, 446 P.2d at 825: "Where the defendant is the moving party, [and] there is no genuine issue as to any material fact[,] . . . the defendant is entitled to a judgment as a matter of law if, upon viewing the record in the light most favorable to the plaintiff, it is clear that the plaintiff would not be entitled to . . . [prevail] under any discernable theory." *See also Pickering v. State*, 57 Haw. 405, 555 P.2d 855 (1976).

30

We are of the view that there is no genuine issue as to any material fact in the record and that the denial of partial summary judgment to appellants and the granting of summary judgment in favor of appellees were proper.

I.

Appellants' first contention is that there has been a violation of Article III, Section 15 of the State Constitution which states, in part:

Each law shall embrace but one subject, which shall be expressed in its title.

Appellants argue that Act 58 contains two different subjects: 1) appropriations for collective bargaining (Part I) and 2) salary increases for officers of the executive, judicial, and legislative branches of the State (Parts II, III, and IV). They further argue that Parts II, III, and IV of the act are illegal because only the subject of Part I, collective bargaining cost item appropriations, is expressed in the title of the act.

We are satisfied that there has been no violation of the requirements of Article III, Section 15 of the Constitution, either in letter or in purpose.

The language of Article III, Section 15, pertaining to the requirements of a single subject, is identical to that contained in Section 45 of the Organic Act.[3] Therefore, we would ascribe to the former what this court has said to be the purposes of the latter as well as the legal effect we have given to that section. In *Jensen v. Turner*, 40 Haw. 604, at 607-08 (1954) this court stated the purposes of Section 45 of the Organic Act to be:

first, to prevent hodge-podge or logrolling legislation, second, to prevent surprise or fraud upon the Legislature

---

[3] The *Proceedings of the Constitutional Convention of Hawaii 1950*, volume 1, at p. 252, shows that the language of this constitutional provision was based on Section 45 of the Organic Act.

by means of provisions in bills of which titles give no intimation; and third, to apprise the people of proposed matters of legislation.

*See also In re Goddard,* 35 Haw. 203, 207-08 (1939); *In re Tom Pong,* 17 Haw. 566, 572-73 (1906); *In re Walker,* 9 Haw. 171 (1893); *Hyman v. Kapena,* 7 Haw. 76, 77-78 (1887). The latter two cases dealt with the predecessor section to Section 45 of the Organic Act, Article 77 of the Constitutions of 1864 and 1887, which read:

> To avoid improper influences which may result from intermixing in one and the same Act such things as have no proper relation to each other, every law shall embrace but one object, and that shall be expressed in the title.

Article III, Section 15 of the State Constitution is mandatory and a violation thereof would render an enactment nugatory. *In re Goddard, supra; Territory v. Kua,* 22 Haw. 307 (1914). However, we have consistently held, recently in *State v. Kahalewai,* 56 Haw. 481, 541 P.2d 1020 (1975), that every enactment of the legislature is presumptively constitutional, and a party challenging the statute has the burden of showing unconstitutionality beyond a reasonable doubt. *Bishop v. Mahiko,* 35 Haw. 608 (1940); *In re Mott-Smith,* 29 Haw. 343 (1926).

Such a presumption of validity prevails in the consideration of Act 58, and to nullify it on the grounds that it was enacted in violation of the subject-title requirements of the State Constitution, the infraction should be plain, clear, manifest, and unmistakable. *Schnack v. City and County of Honolulu,* 41 Haw. 219, 224 (1955); *Dole v. Cooper,* 15 Haw. 297, 299 (1903).

Thus, in *Montclair v. Ramsdell,* 107 U.S. 147 (1882), the U.S. Supreme Court held that the powers which a township was authorized to exert, including issuing bonds, were parts of the single general topic of township incorporation, as expressed in the title: "An Act to set off from the township of Bloomfield, in the county of Essex, a new township, to be called the township of Montclair." In this case, the court stated, in 107 U.S. at 155:

The one general object — the creation of an independent municipality — being expressed in the title, the act in question properly embraced all the means or instrumentalities to be employed in accomplishing that object. As the State Constitution has not indicated the degree of particularity necessary to express in its title the one object of an act, the courts should not embarrass legislation by technical interpretations based upon mere form or phraseology. *The objections should be grave, and the conflict between the statute and the Constitution palpable, before the judiciary should disregard a legislative enactment upon the sole ground that it embraced more than one object, or if but one object, that it was not sufficiently expressed by the title.* (Emphasis added)[4]

We hold that Act 58 dealt with salaries for all officers and employees of the state. Since in our view there is no violation of the single subject requirement of Article III, Section 15 of the State Constitution, appellants' argument that S.B. 1645 was enacted into law as the result of logrolling, with the pay raise provisions for the executive, judicial, and legislative branches (Parts II, III, and IV) combined with the pay raise provisions for personnel under collective bargaining (Part I), becomes immaterial and irrelevant.[5] All parts of the act

---

[4] The court in Montclair v. Ramsdell, supra, uses the term "object" instead of the word "subject" found in Article III, Section 15 of our State Constitution. Although some holdings have made distinctions between these terms, we may consider the terms to be interchangeable, and the Montclair language is clearly applicable. 1A W. Sands, Sutherland Statutory Construction, Section 17.01, n. 19 (1972).

[5] In Ruud, *No Law Shall Embrace More Than One Subject*, 42 Minn. L. Rev. 389 at 448, it is stated: The principal purpose of the one-subject rule is said to be to prevent log-rolling. And log-rolling is itself offensive because it subverts the principle of majority rule by enabling two minorities to combine their legislative strengths to obtain a majority vote for their respective proposals. While in one sense no rule of law prevents the conduct it condemns but only deters it, it can be said in a still different sense that the one-subject rule does not prevent log-rolling. The one-subject rule by its very terms does not proscribe log-rolling; it only proscribes the combining of separate subjects in a single bill. The reason, of course, that it condemns bills which embrace more than one subject is that it is assumed that the subjects were combined in one bill for log-rolling purposes, there being no other reasonable or practical reason. The approach of the constitution is quite clearly indirect.

embrace one general subject, to wit: salaries; and these parts are so connected and related to each other, either logically or in popular understanding, as to be parts of or germane to that general subject. These parts are not and cannot be held to be dissimilar or discordant subjects which would render the act unconstitutional.

> The term "subject," as used in the constitution is to be given a broad and extended meaning, so as to allow the legislature full scope to include in one act all matters having a logical or natural connection. To constitute duplicity of subject, an act must embrace two or more dissimilar and discordant subjects that by no fair intendment can be considered as having any legitimate connection with or relation to each other. All that is necessary is that act should embrace some one general subject; and by this is meant, merely, that all matters treated of should fall under some one general idea, be so connected with or related to each other, either logically or in popular understanding, as to be parts of, or germane to, one general subject.

*Johnson v. Harrison,* 47 Minn. 475, 50 N.W. 923, 924 (1894).

The test used to construe a provision similar to Article III, Section 15 of the Constitution, that is, that each law contain a single subject and that the subject be expressed in its title, was set forth in *Territory v. Dondero,* 21 Haw. 19 (1912).[6] Dondero was convicted for violating a traffic ordinance and fined. The ordinance was entitled: "An ordinance regulating moving travel and traffic upon the streets and other public places of the City and County of Honolulu, providing for the registration, identification, use, and operation of motor cars, and providing penalties for any violation of the ordinance." Dondero contended that a section of this ordinance setting the speed limit was separate from, and went beyond the scope

---

[6] Section 15 of the charter of the City and County of Honolulu (Act 118, Laws of 1907), which was involved, read:

No ordinance shall embrace but one subject, which subject shall be expressed in its title.

of the title subject, "regulating moving travel and traffic." In upholding the ordinance, this court stated, at 29:

It is sufficient if the title of an ordinance fairly indicates to the ordinary mind the general subject of the act, is comprehensive enough to reasonably cover all its provisions, and is not calculated to mislead; but an act which contains provisions neither suggested by the title, nor germane to the subject expressed therein, is, to that extent void.

We hold that a liberal construction of this constitutional requirement, *Territory v. Miguel*, 18 Haw. 402, 406-09 (1907); *Ahmi v. Buckle*, 17 Haw. 200, 203 (1905); *Dole v. Cooper*, *supra*; *Territory v. Oahu County Supervisors*, 15 Haw. 365, 370-71 (1903); *In re Walker*, 9 Haw. 171 (1893), leads to no other conclusion but that the title to Act 58 fairly indicates to the ordinary mind the general subject of the act, is comprehensive enough to reasonably cover all its provisions, and is not calculated to mislead. As this court stated in *Dole v. Cooper*, *supra* at 299:

It is true that the provision of the Organic Act "that each law shall embrace but one subject, which shall be expressed in its title" should be liberally construed, and that an act of the legislature should not be held void on the ground that it conflicts with this provision, except in a clear case. It is sufficient if the various parts of an act have a natural connection, are fairly well embraced in one subject, though somewhat general, and expressed in the title. (citation omitted)

While we concede that the title to the act could have been composed in language which would have been clearer and more precise, we are unable to hold that this is a defect which would render the statute void. We stated in *Schnack v. City and County of Honolulu*, *supra* at 224:

. . . The language of the title is to be given a liberal interpretation, and the largest scope accorded to the words employed that reason will permit in order to bring within the purview of the title all the provisions of the act.

Obviously, the title of the ordinance referred to is not the most appropriate but that is not essential if it indicates

the scope and purpose of the ordinance. Neither is it necessary that the title inform the reader of the specific contents of the bill. If no portion of the bill is foreign to the subject of the legislation as indicated by the title, however general the latter may be, it is in harmony with the constitutional mandate. (citation omitted)

Appellants also argue that the executive, judicial, and legislative salary increases are illegally included in Act 58 because the scope of that act is restricted to "Cost Items of Collective Bargaining Agreements Covering Public Employees and Officials," by the term "including."

We do not consider that the title of Act 58 became narrow by the use of the term "including," as contrasted with the use of the term "relating" as in *Hyman v. Kapena, supra,* or the use of the term "pertaining" in *Jensen v. Turner, supra.* The term "includes" is ordinarily a term of enlargement, not of limitation; a statutory definition of a thing as "including" certain things does not necessarily impose a meaning limited to the inclusion. *People v. Western Air Lines, Inc.,* 42 Cal. 2d 621, 638-39, 268 P.2d 723, 733 (1954); *United States v. Gertz,* 249 F.2d 662 (9th Cir. 1975).

II.

The item veto power of the governor is described in the first paragraph of Article III, Section 17 of the State Constitution, which reads:

Every bill which shall have passed the legislature shall be certified by the presiding officers and clerks of both houses and shall thereupon be presented to the governor. If he approves it, he shall sign it and it shall become law. If the governor does not approve such bill, he may return it, with his specific objections to the legislature. *Except for items appropriated to be expended by the judicial and legislative branches,* he may veto any specific item or items in any bill which appropriates money for specific purposes by striking out or reducing the same; but he shall veto other bills, if at all, only as a whole. (1975 Supp.) (Emphasized portion added in 1974)

Appellants incorrectly interpret this section of the State Constitution to require that judicial and legislative appropriations be stated separately from one another and from other appropriations to the executive, in separate bills, so that the governor can exercise his power of item veto as well as veto. They attack the constitutionality of Act 58 under this section, because it contains appropriations for employees·of all three branches.

We do not read anything in the provisions of Section 17 of the State Constitution which would require the legislature to enact three separate bills so as to permit the governor to exercise his item veto and veto. Before the addition of the 1974 constitutional amendment, emphasized above, the wording of Section 17 of the Constitution allowed the governor to item veto any items of "any bill which appropriates money for specific·purposes," requiring that all other bills be vetoed "if at all, only as a whole." The 1974 constitutional amendment restricted the governor's ability to exercise his item veto by exempting from his reach "items appropriated to be expended by the judicial and legislative branches." This amendment was proposed by the legislature and approved by the electorate to reflect the doctrine of separation of powers in budgetary matters.

The language of Section 17, conferring upon the governor the power to item veto or veto, is clear and explicit and there is no room to construe the provisions in question to reach the interpretation proposed by appellants. Even if such construction should exist, appellants' position on this issue is contradictory to their appeal to this court. Appellants ask this court to declare only Parts II, III, and IV of this act invalid. According to appellees, Part I of the Act, which appellants do not attack, also contains appropriations for employees of all three branches of government. If the appellees' contention in this respect is correct, and appellants have not denied that it is correct, then the reading of the provisions as proposed by appellants would, in this case, require the legislature to identify each employee and the branch where the employee is employed, also his bargaining unit, and to divide the appropriations for Part I into multiple parts, for the separate

bills, each covering a single branch of government, to facilitate the governor's exercise of his veto power. Such a construction would produce an absurd result, inconsistent with the purposes and policies behind the constitutional amendment and should not be adopted. *See G.J. Hawaii, Ltd. v. Waipouli Dev. Co.,* 57 Haw. 564, 560 P.2d 490 (1977); *In re Application of Pioneer Mill Co.,* 53 Haw. 496, 499-500, 497 P.2d 549, 552 (1972); *Carter v. Gear,* 16 Haw. 242 (1904). We find that there is no constitutional requirement that the legislature consider and enact separate bills in order to give the governor an opportunity to exercise his power of veto, especially when the governor approved S.B. 1645.[7]

### III.

Article III, Section 13 of the State Constitution requires each house of the legislature to determine the rules of its proceedings. The third substantive question raised by appellants is whether or not violations of legislative rules will nullify a duly enacted statute.

The threshold question which must be answered in this determination is whether or not this issue is justiciable, that is, whether or not the doctrine of separation of powers will prevent a court from investigating possible violations of legislative rules. As a general rule, the role of the court in supervising the activity of the legislature is confined to seeing that the actions of the legislature do not violate any constitutional provision. We will not interfere with the conduct of legislative affairs in absence of a constitutional mandate to do so, or unless the procedure or result constitutes a deprivation of constitutionally guaranteed rights. *Outagamie County v. Smith,* 38 Wis. 2d 24, 155 N.W.2d 639 (1968); *Application of Lamb,* 67 N.J. Super. 39, 169 A.2d 822 (1961); *Carlton v. Grimes,* 237 Iowa 912, 23

---

[7] This bill cannot be considered similar to a general appropriations bill which is submitted to the legislature by the governor under Article VI, Section 4 of the State Constitution.

N.W.2d 883 (1946); Annot. 76 L. Ed. 967 (1932); 1 W. Carrington, Cooley's Constitutional Limitations, 379-80 (8th ed. 1972).

In *Bednar v. King*, 110 N.H. 475, 272 A.2d 616 (1970), the New Hampshire Supreme Court reviewed a petition for declaratory judgment that a proposed constitutional amendment was not duly enacted because of irregularities in its adoption in the senate and house of representatives. The court held, in part, that since the proposal obtained the constitutionally mandated three-fifths vote in the course of the proceedings in the legislature, none of the violations alleged separately or as a whole could render the vote invalid. Thus, the court stated in 110 N.H. at 476-77, 272 A.2d 618-619:

> As article 100 of the Constitution merely requires that the proposal of a constitutional amendment be effectuated by a "three-fifths vote of the entire membership of each house at any session", the procedure by which the result is obtained in each house is to be determined by its own rules of proceedings. Kay Jewelry Co. v. Board of Registration in Optometry, 305 Mass. 581, 585, 27 N.E.2d 1, 3 (1940); 50 Am.Jur. Statutes, s. 83 (1944); Mason, Manual of Legislative Procedure, ss. 19, 20 (1953). Furthermore violation of its own rules of procedure by a branch of the legislature in the process of arriving at the constitutionally required "three-fifths vote" will not impair the validity of the proposed amendment. Bane v. Superintendent of Boston State Hospital, 350 Mass. 637, 216 N.E.2d 111 (1966); 16 C.J.S. Constitutional Law § 152 (1956); Mason, Manual of Legislative Procedure, s. 24 (1953).

The first paragraph of Article III, Section 16 of the State Constitution reads:

> No bill shall become law unless it shall pass three readings in each house on separate days. No bill shall pass third or final reading in either house unless printed copies of the bill in the form to be passed shall have been

made available to the members of that house for at least twenty-four hours.

The second sentence of Article III, Section 16 was added by the Constitutional Convention of 1968. In its recommendation for the adoption of this amendment the Committee on Legislative Powers and Functions of the convention stated: ".... The twenty-four hour rule not only aids the legislator but also gives the public additional time and opportunity to inform itself of bills facing imminent passage." *See Proceedings of the Constitutional Convention of Hawaii of 1968,* volume 1, p. 216.

The journals of the senate and house of representatives of the eighth state legislature show that Act 58 passed first, second and third readings in the senate on separate days with more than the requisite number of votes. This Act, as S.B. 1645, also validly passed all three readings in the house on separate days with more than majority votes. However, because the senate was unable to agree to the amendments proposed by the house to S.B. 1645, it was sent into conference. Immediately after the bill was favorably reported out of the conference committee, and in accordance with Article III, Section 16, printed copies of the bill to be voted were made available to each member of the legislature on April 10, 1975 (See House Journal, Regular Session 1975, p. 734; Senate Journal, Regular Session 1975, p. 717), at least twenty-four hours before the final vote on S.B. 1645 was taken by the legislature on April 11, 1975. Moreover, there is no allegation of any violation of any other constitutional provision except those previously disposed of, or a result which has produced the deprivation of a constitutionally guaranteed right.

Under these circumstances, the alleged violations of its own legislative rules remain the province of the legislature itself. The power of the legislature should not be interfered with unless it is exercised in a manner which plainly conflicts with some higher law. *Beasley v. Bozeman,* 294 Ala. 288, 315 So.2d 570 (1975).

Affirmed.

*Edward C. Kemper (Kemper & Watts* of counsel) for plaintiffs-appellants.

*Nobuki Kamida,* Deputy Attorney General, for defendants-appellees.