Appellant filed an action for a declaratory judgment on October 20, 1981, in the Circuit Court of Montgomery County to determine the validity and constitutionality of Act No. 81-953, Acts of Alabama, 1981. Appellant filed the declaratory action as a member of the Alabama House of Representatives *Page 1369 
and a resident voting citizen of the State of Alabama.
The declaratory action named as defendants the appellees — John W. Pemberton, Clerk of the Alabama House of Representatives; McDowell Lee, Secretary of the Alabama Senate; Joe C. McCorquodale, Jr., Speaker of the Alabama House of Representatives; and George D.H. McMillan, Jr., Lieutenant Governor of the State of Alabama — as public officials charged with the administration of Act No. 81-953, Acts of Alabama 1981. Gafford claims that there was substituted for House Bill 38 an altered or amended bill, which was passed as Act No. 81-953, in violation of Art. IV, § 61, of the Alabama Constitution.
The parties tendered the trial court a stipulation of facts. This stipulation is summarized as follows:
1. On August 4, 1981, House Bill 38 was introduced in the House of Representatives. House Bill 38 proposed a constitutional amendment to provide for the budgetary process, the making of appropriations and a mandatory time in which to act, as well as a prohibition of other legislation.
2. On August 11, 1981, House Bill 38 was reported out of the House Judiciary Committee. Subsequently, a substitute bill was offered which was adopted by the House and then passed and sent to the Senate. The substitute bill proposed a statute to deal with the budgetary process. Substituted House Bill No. 38 was reported out of the Senate Finance and Taxation Committee and was passed by the Senate.
3. Governor James signed House Bill No. 38 as substituted and passed by both the House and the Senate; thus Act No. 81-953 became law on August 19, 1981.
At the final hearing on the declaratory action, the stipulation of facts and other evidence were presented to the court. In its final judgment the circuit court posed the question before it as being whether "a bill which is reported out of committee as a constitutional amendment [can] be altered or amended by either House to become a regular statutory bill and not be violative of Art. IV, Sec. 61 of the Constitution of Alabama upon its passage?"
The final judgment entered by the trial court is as follows:
 "This cause comes before this Court upon Plaintiff's Bill for Declaratory Judgment and Defendants' answers thereto. At the date and time set for final hearing, the parties, represented by counsel, submitted a stipulation of fact and presented other evidence to this Court.
 "The question before the Court is as follows: Can a bill which is reported out of committee as a Constitutional Amendment be altered or amended by either House to become a regular statutory bill and not be violative of Art. IV, Sec. 61 of the Constitution of Alabama upon its passage?
 "Upon a careful reading of Art. IV, Sec. 6, `No law shall be passed except by bill, and no bill shall be so altered or amended on its passage through either House as to change its original purpose,' it appears clear that it can be done.
 "This Court cannot say that Act No. 81-953 is patently unconstitutional which it would have to do prior to ruling Act. No. 81-953 invalid.
 "The Court finds that it has jurisdiction over the parties and the subject matter of the action. It is therefore,
 "ORDERED, ADJUDGED AND DECREED by this Court as follows:
 "1.) That Act Number 81-953 does not violate the Constitution of the State of Alabama.
 "2.) That the costs are taxed to the Plaintiff, for which execution may issue.
"DONE this the 5th day of January, 1982."
Notice of appeal was filed January 21, 1982. The record and a supplement thereto were transmitted to this Court on January 22, 1982. Appellant moved to correct the record and it was corrected on February 9, 1982, and as corrected the record on this appeal was filed in this Court February 9, 1982. In the meantime appellant moved to expedite the consideration of this appeal on *Page 1370 
the grounds that the Legislature was in regular session and the challenged Act restricted the passage of other legislation until bills making "basic" appropriations were signed by the presiding officer of each House of the Legislature. By order of this Court on February 1, 1982, this appeal was expedited and submitted on briefs on February 9, 1982.
The issues raised by appellant Gafford on appeal are: (1) Whether Act No. 81-953 violates Art. IV, § 61, of the Constitution of Alabama of 1901; (2) whether Act No. 81-953, violates Art. IV, § 45, of the Constitution of Alabama of 1901; and (3) whether Act No. 81-953 violates Art. IV, § 66, of the Constitution of Alabama of 1901.
House Bill No. 38 as originally introduced provided:
 "SYNOPSIS: This bill proposes an amendment to the Constitution that provides for the manner for considering the budget bills and the time frame therefor.
"A BILL TO BE ENTITLED AN ACT
 "Proposing an amendment to the Constitution prescribing the manner for legislative consideration of the general fund budget bill and the special educational budget bill and the time frame therefor.
"BE IT ENACTED BY THE LEGISLATURE OF ALABAMA:
 "Section 1. The following amendment to the Constitution of Alabama of 1901 is proposed and shall become valid as a part thereof when approved and proclaimed as provided by law:
"PROPOSED AMENDMENT
 "Commencing in the year 1982 and each regular session of the legislature thereafter the budget bills shall be the prior order of business and the continuing order of business, as follows:
 "(a) On or before the second legislative day the Governor shall transmit to each house of the legislature a written document in form proper for introduction for each the general fund budget and the special educational fund budget; provided, however, the legislature may authorize a later legislative day by a favorable vote of two-thirds membership in each house.
 "(b) Commencing on or before the tenth legislative day, one hour after convening, the House shall consider the budget bills, from day to day, until final voting by that body on each such budget bill. On the tenth legislative day if no committee action has been taken on such bills, the bills shall be considered automatically to be before the House on their third reading. The final voting shall not be taken more than three legislative days from the third reading of the bills. Except for the roll call of the districts, resolutions and local legislation, no other business of any nature whatsoever shall come before the House until a recorded vote is taken on each budget bill.
 "(c) Commencing from the time the general fund budget bill or the special educational trust fund budget bill is received by the Senate, that body shall consider as its first order of business each such budget bill, from day to day, until final voting thereon. The final voting shall not be taken more than three legislative days from the third reading of each such budget bill. Except for the roll call of the districts, resolutions and local legislation, no other business of any nature whatsoever shall come before the Senate until a recorded vote is taken on each budget bill.
 "(d) In the event either or both budget bills are referred to a Conference Committee, it shall submit its report within three legislative days. If such committee reaches no consensus by the third legislative day another Conference Committee shall be appointed and shall render its report within three legislative days. Thereafter a new Conference Committee may be appointed at any time until adjournment sine die. If either or neither budget bill is passed, the amount of funds *Page 1371 
appropriated for the previous fiscal year from the general fund or from the special educational trust fund, as the case may be, shall be automatically the appropriations for the fiscal year for which either or neither budget bill is enacted into law.
 "(e) After final passage by the House and the Senate of the budget bills, no business of any nature whatsoever shall be transacted in either house until the Governor has signed each such budget bill.
 "Section 2. An election upon the proposed amendment is ordered to be held on the first Tuesday after the expiration of three months from final adjournment of the current session of the legislature. The election shall be held in accordance with the provisions of Section 284 and 285 of the Constitution, as amended, and Sections 17-17-1 through 17-17-6 of the Code of Alabama 1975.
 "Section 3. Notice of the election and of the proposed amendment shall be given by proclamation of the Governor, which proclamation shall be published once a week for four successive weeks next preceding the day appointed for the election in a newspaper in each county of the state. In every county in which no newspaper is published, a copy of the notice shall be posted at each courthouse and post office."
Act No. 81-953, as passed by the Legislature and signed by the Governor provides:
 "An act, Relating to the legislative process in enacting certain appropriation acts; (a) requiring the Governor to transmit to the Legislature, on or before the second legislative day of each regular session held after January 1, 1982, a proposed budget; (b) providing that, until such time as bills making appropriations for the then ensuing fiscal year (or for such other budget period as may at the time be in effect) for the ordinary expenses of the executive, legislative and judicial departments of the state, for the payment of the public debt, and for education (to the extent that any such item is not otherwise provided for) shall have been signed by the presiding officer of each house in the manner provided in the Constitution, no bill (other than a bill making any part of any of the said appropriations), shall be signed by either the presiding officer of the House or Senate and transmitted to the other house; (c) providing that the provisions of this act prohibiting final passage of certain bills in either house may be made inapplicable by three-fifths vote of the house in which a bill is pending of a resolution declaring the said prohibition inapplicable to the bill specified in such resolution; (d) providing that upon the signing and presentation to the Governor in accordance with Sections 66 and 125 of the Constitution of bills making the said appropriations, the provisions of this act prohibiting the final passage of certain bills in either house shall cease to be effective and shall not be revived or become again effective for the then current regular session as a result of the subsequent legislative history of any bill so signed and presented or of a determination that such bill is wholly or in part invalid; and (e) providing that nothing contained in this act shall be construed as requiring the legislature to make any appropriation not otherwise required by the Constitution to be made, and (f) setting a termination date.
"BE IT ENACTED BY THE LEGISLATURE OF ALABAMA:
 "Section 1. (A) The following words and phrases, whenever used in this act, shall have the following respective meanings:
 "`Basic Appropriations' means, with respect to any regular session of the Legislature, such appropriations as the Legislature may deem appropriate for the expenditures by the State during the ensuing Budget Period for the ordinary expenses of the executive, legislative and judicial departments of the State, for payment of the public debt, and for education (excluding, however, any item within the scope of the foregoing that is at the time provided for by a continuing appropriation or otherwise). *Page 1372 
 "`Budget Period' means a fiscal year of the State or such period other than fiscal year as may hereafter be fixed by law as the period with respect to which State budgets are prepared and State appropriations are made.
 "(B) On or before the second legislative day of each regular session of the Legislature, beginning with the first regular session after January 1, 1982, the Governor shall transmit to the Legislature for its consideration a proposed budget for the then next ensuing Budget Period.
 "(C) The duty of the Legislature at any regular session to make the Basic Appropriations for any Budget Period that will commence before the first day of any succeeding regular session shall be paramount; and, accordingly, beginning with the first regular session held after January 1, 1982, no bill (other than a bill making any of the Basic Appropriations) shall be signed by either the presiding officer of the House or Senate and transmitted to the other house until bills making the Basic Appropriations for the then ensuing Budget Period shall have been signed by the presiding officer of each House of the Legislature in accordance with Section 66 of the Alabama Constitution and presented to the Governor in accordance with Section 125 of the Constitution; provided, that this paragraph (C) shall not affect the adoption of resolutions or the conduct of any other legislative functions that do not require a third reading; and provided further, that following adoption, by vote of either house of not less than three-fifths of the members elected to that house, of a resolution declaring that the provisions of this paragraph (C) shall not be applicable in that house to a particular bill, which shall be specified in said resolution by number and title, the bill so specified may proceed to final passage therein.
 "(D) Upon the signing and presentation to the Governor in accordance with the said Sections 66 and 125 of bills making the Basic Appropriations, the provisions of the foregoing paragraph (C) prohibiting the final passage of bills in the House and Senate (other than bills making any part of the Basic Appropriations) shall cease to be effective and shall not be revived or become again effective as a result of (i) the subsequent legislative history of any bill so signed and presented, including any veto, return with executive amendment, or any other action, or failure to act, by either the Governor or the Legislature under the provisions of the said Section 125; or (ii) a determination, by either judicial decree or opinion of the Justices of the Alabama Supreme Court, that any bill so signed and presented is wholly or in part invalid.
 "(E) The Legislature may, by statute or rule, make such further provisions for the timely passage of bills making the Basic Appropriations.
 "(F) Nothing contained herein shall be construed as requiring the Legislature to make any appropriation not otherwise required to be made.
 "Section 2. All laws or parts of laws which conflict with this act are hereby repealed.
 "Section 3. The provisions of this act are severable. If any part of this act is declared invalid or unconstitutional, such declaration shall not affect the part which remains.
 "Section 4. This act shall become effective on January 1, 1982 and shall self-terminate on July 1, 1982."
House Bill 38, as originally introduced proposed by bill a constitutional amendment, the "purpose" of which was to propose a constitutional amendment to require the Legislature to pass budgets and appropriations necessary for the operation of our state government, prior to the consideration and passage of other bills by the Legislature. The substitute bill proposed astatute, the "purpose" of which was to establish a paramount duty on the Legislature to consider and pass bills making appropriations necessary for the operation of our state government and to present such bills to the Governor before any other bills are signed by the presiding officer of either *Page 1373 
House of the Legislature. The "title" to House Bill 38 as originally introduced shows that it was a proposedconstitutional amendment. The title to substituted House Bill 38 shows it is "an act."
The first question posed on appeal addresses Art IV, § 61, of the Constitution, which provides: "No law shall be passed except by bill, and no bill shall be so altered or amended on its passage through either House as to change its original purpose." The appellant submits that the substitution of a bill proposing a statute for a bill originally introduced proposing a constitutional amendment so alters the purpose of the original bill as to violate § 61.
Neither the appellant nor appellees have cited in their respective briefs any controlling precedents or authority from prior case law in this state or from other jurisdictions which addresses the precise issue, here presented as to Section 61. Accordingly, this Court must ascertain the meaning of the phrase "to change its original purpose" in Section 61 of the Constitution as the same relates to the authority of the Legislature to change an original bill proposing a constitutional amendment into a bill that proposes the enactment of a statute. Clearly, the legislative bodies can do both, but can they lawfully first propose a constitutional amendment and then amend that bill into a statute during the legislative process? We note that both proposals, the original House Bill 38 and the substitute therefor, do propose the establishment of some sort of priority or paramount duty to be imposed upon the Legislature to consider an act on budgetary matters and appropriation bills before other legislative bills are taken up and considered. It is observed, however, that the act as finally passed provides that it becomes effective on January 1, 1982, and then "self-destructs" or terminates on July 1, 1982. Therefore, Act No. 81-953 would have no effect on future Legislatures. One might then characterize this Act as a trial or experiment in legislative process and procedure. Obviously, the budgetary process is a most important duty which is conducted at each regular session of the Legislature.
Without question, Act No. 81-953 established a legislativerule of procedure, and our Constitution grants the power to each house to make rules governing its procedure. Ala. Const., Art. IV, § 53. While this power is usually exercised by the Legislature in adopting rules or procedure for each house, and joint rules, the Legislature has in the past adopted a rule or regulation of procedure by statute. Act No. 31, Acts of Alabama 1919, page 33; Code 1975, § 4120-10 (a).
In resolving the first issue presented in this appeal, we must consider the basic differences in statutory law and constitutional law. The Legislature can only propose a constitutional amendment; it cannot enact one. Constitution 1901, Art. XVIII, §§ 284 through 287, as amended. The legislative procedure for proposing constitutional amendments is specifically provided for in Article XVIII of the Constitution and not in Article IV relating to the Legislature. Only upon an affirmation vote of a majority of our citizens at a state-wide election can our basic law be amended; a constitutional amendment, until subsequently changed by the same process, permanently controls the matters provided for therein. Provisions of our Constitution are of a higher order of law than statutes. Constitutional provisions are more basic and permanent than statutes. The Legislature acting in its plenary power can adopt or amend a statute by majority vote of both houses, and upon approval by the Governor, it becomes law.
In proposing amendments to the Constitution under Section 284, as amended, the Legislature is not exercising its power tomake laws. In Johnson v. Craft, 205 Ala. 386, 393, 394,87 So. 375 (1921), this Court discussed the applicable principles of law which apply:
 "The provisions of the Constitution providing for its amendments are mandatory, not directory — binding on the people themselves and concluding every department, body, officer, and agency under its authority. Authorities supra; 12 C.J. pp. 688, 689. The power granted the Legislature *Page 1374 
to propose amendments to the Constitution is a particular, special power, not possessed by the Legislature otherwise than through grant by the instrument itself. It can only be exercised in the mode prescribed, and the mode defined is the measure of the power. Collier v. Frierson [24 Ala. 100], supra; Oakland, etc., Co. v. Hilton, 69 Cal. 479, 514, 11 P. 3; Jones v. McDade [200 Ala. 230, 233, 75 So. 988], supra. It results from the system and the provision of the Constitution that in proposing amendments to that instrument, to be voted upon by the electorate, the Legislature is not exercising its other power to make laws. Jones v. McDade, supra; Livermore v. Waite, 102 Cal. 113, 36 P. 424, 25 L.R.A. 313, 315, 316; 12 C.J. p. 693; 6 R.C.L. § 19, pp. 28, 29. Recognition of this last-stated principle — resultant, as it is, from those previously reiterated — is an essential prerequisite to any sound, logical conclusion upon the objection now being considered. To ignore it or to deny it appropriate effect is to invite error in judgment and to court the affirmation of inexcusable fallacy."
205 Ala. 386, 393, 394.
Significantly, many constitutional provisions relating to the enactment of statutes are not applicable to procedure amending the Constitution.
 "Proposed amendments to the Constitution are governed by sections 284-287, inclusive, of our Constitution, and limitations and restrictions applicable to the legislative function of enacting statutes are without application."
Opinion of the Justices, No. 29, 227 Ala. 296, 298, 149 So. 781
(1933).
Section 61 of the Constitution does not apply to bills proposing constitutional amendments. Opinion of The Justices,227 Ala. 296, 149 So. 781 (1933); Jones v. McDade, 200 Ala. 230,75 So. 988 (1917). Section 61 does apply to statutes enacted by the Legislature.
There are other differences between proposed constitutional amendments and acts of the Legislature. The approval of the Governor is not required on a bill enacted by the Legislature proposing constitutional amendments. See, Ala. Const. Art. XVIII, § 284, as amended. Statutes are enacted upon majority vote, while bills proposing constitutional amendments require a vote of three-fifths of all members elected to each house. Ala. Const. Art. IV, § 63 and Art. XVIII, § 284, as amended.
Since Act No. 81-953 was enacted into law as a statute, we hold that the provisions of Section 61 of the Constitution are applicable, and control the legislative process. The original "purpose" of House Bill 38, as introduced, was to propose a constitutional amendment, that is, a basic, permanent change in the supreme and paramount law of this state.
 "The Constitution of Alabama, like that of the nation and of the other states, is the supreme law within the realm and sphere of its authority. Subject only to the restraints resulting from the Constitution of the United States, the Constitution of Alabama is the highest form and expression of law that exists in this state. The source of its creation and the character of its sanction, viz. the people's deliberate will, invest the Constitution with its paramount quality. The Constitution's control is absolute wherever and to whatever its provisions apply; and every officer, executive, legislative, and judicial, is bound by oath (section 279) to support the Constitution, to vindicate and uphold its mandates, and to observe and enforce its inhibitions without regard to extrinsic circumstances. It commits to no body, officer, or agent any authority or power whatever to change or modify or suspend the effect or operation of its mandates or its prohibitions; the instrument itself prescribes the exclusive modes by which it may be altered or amended, or its effect and operation changed. Otherwise than as these exclusive modes contemplate and authorize the Constitution's alteration, its character is permanent, its force and influence enduring. . . ."
Johnson v. Craft, 205 Ala. at 393, 87 So. 375.
As was stated in the early history of this State, in the case of Perry County v. Selma, *Page 1375 Marion Memphis Railroad Company, 58 Ala. 546 (1877), this Court held:
 "We adopt, as our own, the language of one of the soundest and most thorough thinkers and jurists, who have written on the subject of organic law, embodied in our constitutions:
 "`The courts tread upon very dangerous ground when they venture to apply the rules, which distinguish directory and mandatory statutes, to the provisions of a Constitution. Constitutions do not usually undertake to prescribe mere rules of proceeding, except when such rules are looked upon as essential to the thing to be done; and they must then be regarded in the light of limitations upon the power to be exercised. It is the province of an instrument of this solemn and permanent character to establish those fundamental maxims, and fix those unvarying rules, by which all the departments of the government must at all times shape their conduct. * * * We are not, therefore, to expect to find in a Constitution provisions which the people, in adopting it, have not regarded as of high importance, and worthy to be embraced in our instrument which, for a time at least, is to control alike the government and the governed, and to form a standard by which is to be measured the power which can be exercised as well by the delegate, as by the sovereign people themselves. If directions are given respecting the times or modes of proceeding in which a power should be exercised, there is at least a strong presumption that the people designed it should be exercised in that time and mode only.' — Cooley Const. Lim. 78."
58 Ala. at 556.
The violation of Section 61 occurs when the "purpose" of the bill passed is different from the original "purpose" of the bill as introduced. The "purpose" of a bill within this section is the general purpose of a bill, not the mere details through which its purpose is manifested and effectuated. Opinion of theJustices, 361 So.2d 536 (Ala. 1978); Comer v. City of Mobile,337 So.2d 742 (Ala. 1976); Blackwell v. State, 230 Ala. 139,162 So. 310 (1935); State Docks Commission v. State, 227 Ala. 521,150 So. 537 (1933). We hold that a bill proposing an amendment to our Constitution which is altered or amended on its passage through either house into a bill proposing the enactment of a statute has been changed in its original purpose. Changing a proposal to amend the Constitution into a bill proposing the enactment of a statute is not a mere detail through which the original purpose is manifested and effectuated. Such procedure violates Section 61 of the Constitution, and voids the resulting statute. Accordingly, Act No. 81-953 is invalid and therefore void, having been enacted contrary to and in violation of Section 61 of the Constitution.
In view of our holding with respect to the application of Section 61 of the Constitution, it is not necessary to address the other issues raised on this appeal. The judgment of the trial court is reversed and a judgment is rendered declaring Act 81-953 null and void.
REVERSED AND RENDERED.
All Justices concur, except JONES, J., not sitting.