118 P.3d 1188

Patrick Y. TAOMAE, Barbara L. Franklin, Gene Bridges, Nan Kaaumoana, A. Joris Watland, George Harris, Hacksoon Andrea Low, Esther Solomon, Richard G. Chisholm, Michael J. Golojuch, Christopher A. Verleye, Heather K.L. Conahan, Juliet Begley, Pamela G. Lichty, Sheryl L. Nicholson, Eric G. Schnedier, Carolyn M. Golojuch; Colin Yost, William A. Harrison, Norman V. Bode, Rodney E. Aiu, Richard C. Jackson, Theodore N. Isaac, Mark R. Ewald, Rev. Michael G. Young, Paula F. Myers, Louis Rosof, Joan H. Rich, Susan L. Arnett, Pamela O'Leary Tower, David Bettencourt, Lunsford Dole Phillips, Mary Anne Scheele, Raymond Scheele, Robert P. McPherson, Jean A. Evans, Donald E. Evans, and Arthur E. Ross, Plaintiffs

v.

Linda LINGLE, in her official capacity as Governor of the State of Hawai'i; and Dwayne D. Yoshina, in his official capacity as Chief Election Officer for the State of Hawai'i, Defendants.

No. 26962.

Supreme Court of Hawai'i.

Sept. 1, 2005.

As Amended Sept. 2, 2005.

Lois K. Perrin, American Civil Liberties Union of Hawaii Foundation; (Earle A. Partington, Honolulu, on the briefs) for Plaintiffs.

Mark Bennett, Attorney General of Hawai'i; (Charleen M. Aina & Russell A. Suzuki, Deputy Attorneys General, with him on the briefs) for Defendants.

Susan Jaworowski (Senate Majority Attorney) and Richard Dvonch (Chief Attorney of the House of Representatives), Honolulu, for Amicus Curiae The Legislature of the State of Hawai'i.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by ACOBA, J.

We conclude that articles III and XVII of the Hawai'i Constitution require that (1) a proposal to amend the constitution must be reflected in the title of the bill and (2) a proposed constitutional amendment must be read three times in each house to be validly adopted. For the reasons stated herein, we determine that House Bill 2789, House Draft 1, Senate Draft 1, 2004 Haw. Sess. L. Act 60 at 301 [hereinafter, H.B. 2789, H.D. 1, S.D. 1] violated these requirements.

## I.

In this original proceeding, thirty-eight [1] registered voters of the State of Hawai'i

---

1. The Plaintiffs are Patrick Y. Taomae, Barbara L. Franklin, Gene Bridges, Nan Kaaumoana, A.

(collectively, Plaintiffs) challenge the passage of H.B. 2789, H.D. 1, S.D. 1, which

propose[d] a constitutional amendment to allow the [Hawai'i State Legislature (legislature)] to define what behavior constitutes a continuing course of conduct in sexual assault cases [and] amend[ed] the law defining continuous sexual assault of a minor[.]

*See* Complaint at 2, ¶ 2.[2] Plaintiffs contend that this bill was not validly adopted because its title was insufficient and because the constitutional amendment did not receive three readings in each house of the legislature. Plaintiffs thus seek: a declaratory judgment that H.B. 2789, H.D. 1, S.D. 1 was not validly passed and, therefore, should not have been signed by Defendant Governor Linda Lingle (Governor Lingle) or submitted to the voters in the November 2, 2004 general election; an injunction prohibiting Governor Lingle and Defendant Dwayne D. Yoshina, Chief Elections Officer (collectively, Defendants) from certifying any votes cast on Question 1 (pertaining to H.B. 2789, H.D. 1, S.D. 1) in the November 2, 2004 general election; an injunction prohibiting Defendants from allowing Question 1 to be printed or published as part of the Hawai'i Constitution; attorneys' fees and costs; and such other relief as this court may deem just and proper.

Defendants respond that H.B. 2789, H.D. 1, S.D. 1 was properly enacted because the legislature followed the procedure set forth in articles III and XVII of the Hawai'i Constitution. Article III, entitled "The Legislature," provides in pertinent part:

### BILLS; ENACTMENT

Section 14. No law shall be passed except by bill. *Each law shall embrace but one subject, which shall be expressed in its title.* The enacting clause of each law shall be, "Be it enacted by the legislature of the State of Hawaii."

### PASSAGE OF BILLS

Section 15. *No bill shall become law unless it shall pass three readings in each house* on separate days. No bill shall pass third or final reading in either house unless printed copies of the bill in the form to be passed shall have been made available to the members of that house for at least forty-eight hours.

Every bill when passed by the house in which it originated, or in which amendments thereto shall have originated, shall immediately be certified by the presiding officer and clerk and sent to the other house for consideration.

Any bill pending at the final adjournment of a regular session in an odd-numbered year shall carry over with the same status to the next regular session. Before the carried-over bill is enacted, it shall pass at least one reading in the house in which the bill originated.

(Emphases added.) Article XVII, entitled "Revision and Amendment," provides in pertinent part:

### AMENDMENTS PROPOSED BY LEGISLATURE

Section 3. The *legislature may propose amendments to the constitution by adopting the same, in the manner required for legislation,* by a two-thirds vote of each house on final reading at any session, after either or both houses shall have given the governor at least ten days' written notice of the final form of the proposed amendment, or, with or without such notice, by a majority vote of each house on final reading at each of two successive sessions.

Upon such adoption, the proposed amendments shall be entered upon the journals, with the ayes and noes, and published once in each of four successive

Joris Watland, George Harris, Haksoon Andrea Low, Esther Solomon, Richard G. Chisholm, Michael J. Golojuch, Christopher A. Verleye, Heather K.L. Conahan, Juliet Begley, Pamela G. Lichty, Sheryl L. Nicholson, Eric G. Schneider, Carolyn M. Golojuch, Colin Yost, William A. Harrison, Norman V. Bode, Rodney E. Aiu, Richard C. Jackson, Theodore N. Isaac, Mark R. Ewald, Rev. Michael G. Young, Paula F. Myers, Louis Rosof, Joan H. Rich, Susan L. Arnett, Pamela O'Leary Tower, David Bettencourt, Lunsford Dole Phillips, Mary Anne Scheele, Raymond Scheele, Robert P. McPherson, Jean A. Evans, Donald E. Evans, and Arthur E. Ross.

2. Because this is an original proceeding, there is no record on appeal. The basic facts are not disputed by the parties.

weeks in at least one newspaper of general circulation in each senatorial district wherein such a newspaper is published, within the two months' period immediately preceding the next general election.

At such general election the proposed amendments shall be submitted to the electorate for approval or rejection upon a separate ballot.

The conditions of and requirements for ratification of such proposed amendments shall be the same as provided in section 2 of this article for ratification at a general election.

(Emphasis added.)

Defendants also maintain that the process by which H.B. 2789, H.D. 1, S.D. 1 was approved was in conformity with the past practice of the legislature, which had not been previously challenged. They assert that Plaintiffs cannot show a "grave offense" to the constitution and, therefore, urge this court to give deference to the legislature's interpretation of the constitutional requirements for passing a constitutional amendment.

The legislature submitted an amicus brief echoing the arguments of Defendants. According to its brief, the legislature approved

H.B. 2789, H.D. 1, S.D. 1 in compliance with the language of the Hawai'i Constitution and with this court's decision in *Watland v. Lingle*, 104 Hawai'i 128, 140, 85 P.3d 1079, 1091 (2004), which held that clear and unambiguous constitutional provisions must be construed as they are written. The legislature further asserts that a decision favorable to the Plaintiffs in this case would "interfere with the Legislature's normal course of business[.]"

## II.

H.B. 2789 was introduced in the legislature in response to this court's decision in *State v. Rabago*, 103 Hawai'i 236, 81 P.3d 1151 (2003). In that case, a majority of this court struck down Hawai'i Revised Statutes (HRS) § 707–733.5(2) (Supp.2002)[3] because it infringed on a defendant's constitutional right to a unanimous jury verdict under article I, sections 5[4] and 14[5] of the Hawai'i Constitution, inasmuch as it did not require the jury to agree on which three specific acts constituted the "continuous sexual assault." *Id.* at 253–54, 81 P.3d at 1168–69.

On January 28, 2004, H.B. 2789 was introduced in the House of Representatives as "A Bill for an Act Relating to Sexual Assault."

---

3. HRS § 707–733.5, entitled "Continuous sexual assault of a minor under the age of fourteen years," states, in pertinent part:

 (1) Any person who:
 (a) Either resides in the same home with a minor under the age of fourteen years or has recurring access to the minor; and
 (b) Engages in three or more acts of sexual penetration or sexual contact with the minor over a period of time, but while the minor is under the age of fourteen years,

 is guilty of the offense of continuous sexual assault of a minor under the age of fourteen years.

 (2) To convict under this section, the trier of fact, if a jury, *need unanimously agree only that the requisite number of acts have occurred; the jury need not agree on which acts constitute the requisite number.*

 (Emphasis added.)

4. Article I, section 5 of the Hawai'i Constitution, entitled "Due Process and Equal Protection," states:

 No person shall be deprived of life, liberty or property without due process of law, nor be denied the equal protection of the laws, nor be denied the enjoyment of the person's civil rights or be discriminated against in the exer-

cise thereof because of race, religion, sex or ancestry.

5. Article I, section 14 of the Hawai'i Constitution, entitled "Rights of Accused," states:

 In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury of the district wherein the crime shall have been committed, which district shall have been previously ascertained by law, or of such other district to which the prosecution may be removed with the consent of the accused; to be informed of the nature and cause of the accusation; to be confronted with the witnesses against the accused, provided that the legislature may provide by law for the inadmissibility of privileged confidential communications between an alleged crime victim and the alleged crime victim's physician, psychologist, counselor or licensed mental health professional; to have compulsory process for obtaining witnesses in the accused's favor; and to have the assistance of counsel for the accused's defense. Juries, where the crime charged is serious, shall consist of twelve persons. The State shall provide counsel for an indigent defendant charged with an offense punishable by imprisonment.

It passed its first reading on the same day. H.B. 2789 proposed to amend HRS § 707–733.5(2) to read, "To convict under this section, the trier of fact, if a jury, need not unanimously agree that all of the alleged acts have occurred; provided that the jury agrees on which acts constitute the requisite number."

The amendment was intended to harmonize HRS § 707–733.5(2) with the decision in *Rabago.* On February 23, 2004, H.B. 2789 was amended upon the advice of the House Committee on Judiciary and designated H.B. 2789, H.D. 1. These amendments did not affect the proposed changes to HRS § 707–733.5(2). On February 23, 2004, H.B. 2789, H.D. 1 passed its second reading in the House of Representatives. On February 25, 2004, H.B. 2789, H.D. 1 passed its third reading in the House of Representatives by a vote of forty-nine to zero with two members excused.

On February 26, 2004, H.B. 2789, H.D. 1 passed its first reading in the Senate. On March 31, 2004, the Senate Committee on Judiciary and Hawaiian Affairs submitted a report agreeing with the Attorney General's opinion that it was necessary to amend the Hawai'i Constitution in order for the legislature to effectuate the statutory amendment because the change proposed in H.B. 2789, H.D. 1 did not "do anything to avoid the *Rabago* decision." The committee recommended that the bill be amended by "[a]dding a constitutional amendment to allow the Legislature to define what behavior constitutes a continuing course of conduct in sexual assault crimes[.]" The bill was so amended and designated as H.B. 2789, H.D. 1, S.D. 1. As amended, the bill stated in pertinent part,

SECTION 1. The purpose of this Act is to propose an amendment to article I of the Constitution of the State of Hawaii to provide that the legislature may define what behavior constitutes a continuing course of conduct in sexual assault crimes and to amend the Hawaii penal code to statutorily define the behavior.

SECTION 2. Article I of the Constitution of the State of Hawaii is amended by adding a new section to be appropriately designated and to read as follows:

"SEXUAL ASSAULT CRIMES

Section . The legislature may define what behavior constitutes a continuing course of conduct in sexual assault crimes."

2004 Haw. Sess. L. Act 60, §§ 1–2 at 301. On March 31, 2004, H.B. 2789, H.D. 1, S.D. 1 passed its second reading in the Senate. On April 2, 2004, H.B. 2789, H.D. 1, S.D. 1 passed its third reading in the Senate by a vote of twenty-three to zero with two members excused. On the same day, H.B. 2789, H.D. 1, S.D. 1 was certified by the Senate President and Senate Clerk as having passed the Senate and was sent back to the House of Representatives for consideration. On April 5, 2004, the House of Representatives informed the Senate that it disagreed with the amendments proposed by the Senate in H.B. 2789, H.D. 1, S.D. 1. 2004 Senate Journal at 508.

On April 6, 2004, the Senate sent notice of the final form of H.B. 2789, H.D. 1, S.D. 1 to Governor Lingle as required by article XVII, section 3 of the Hawai'i Constitution. On April 8, 2004, members from both the Senate and the House of Representatives were appointed to a conference committee to consider the amendments proposed in H.B. 2789, H.D. 1, S.D. 1. 2004 House Journal at 764, 793. As acknowledged by counsel at oral argument, the conference committee did not issue a report. On April 22, 2004, the House of Representatives (1) advised Governor Lingle that the conference managers on the part of the House of Representatives agreed to the amendments proposed by the Senate and (2) sent notice to Governor Lingle of the final form of H.B. 2789, H.D. 1, S.D. 1 to be considered for final reading by the House of Representatives as required by article XVII, section 3 of the Hawai'i Constitution. 2004 House Journal at 1063.

On April 26, 2004, H.B. 2789, H.D. 1, S.D. 1 passed its final reading in the House of Representatives by a vote of forty-four to zero with seven members excused. Thereafter, the House informed the Senate that it had agreed to the amendments made and that the bill had passed final reading in the House of Representatives. 2004 Senate Journal at 715. On April 27, 2004, H.B. 2789, H.D. 1, S.D. 1 was sent to Governor Lingle.

H.B. 2789, H.D. 1, S.D. 1 was presented to the voters as Question 1 at the November 2, 2004 General Election. It was one of four proposed constitutional amendments submitted to the electorate. A total of 282,852 voters (65.6%) voted in favor of Question 1. On the other hand, 148,152 voters (34.4%) voted against Question 1 or left the question blank.

## III.

On October 15, 2004, eight Plaintiffs involved in this case filed a related suit [6] in the Circuit Court of the First Circuit (circuit court case).[7] The circuit court case sought, *inter alia*, (1) a declaration that the final bill was not properly adopted by the legislature and, therefore, should not have been signed by Governor Lingle and submitted to the voters at the November 2, 2004 general election and (2) an injunction prohibiting Defendants from placing Question 1 on the November 2, 2004 ballot, disseminating voter information concerning Question 1, and tabulating or certifying any votes cast on Question 1. Plaintiffs also filed a motion for a temporary restraining order, which was denied on October 26, 2004.

On November 22, 2004, Plaintiffs filed their complaint in this matter. On November 23, 2004, Defendants filed their answer. On January 21, 2005, Plaintiffs filed their

opening brief. On March 4, 2005, Defendants filed their answering brief. On March 17, 2005, the legislature filed its amicus brief. On March 18, 2005, Plaintiffs filed their reply brief. On July 12, 2005, Plaintiffs filed a request for judicial notice of several undisputed facts. On July 14, 2005, this court heard oral argument [8] and, at that time, Chief Justice Moon orally granted the request for judicial notice on behalf of the court without objection.

## IV.

■ As mentioned previously, Plaintiffs challenge the validity of the passage of H.B. 2789, H.D. 1, S.D. 1 and its presentation to the electorate in the 2004 general election.[9] The present case is not a typical "election contest" that is reviewed pursuant to HRS § 11–172 (1993). This court has jurisdiction over cases challenging the validity of constitutional amendments presented to the voters at a general election under HRS chapter 11, Part XI,[10] HRS § 602–5(6) (1993),[11] and HRS § 602–5(7) (1993).[12] *Watland*, 104 Hawai'i at 133 n. 8, 135 n. 12, 85 P.3d at 1084 n. 8, 1086 n. 12; *Kahalekai v. Doi*, 60 Haw. 324, 330–31, 590 P.2d 543, 548–49 (1979). Because the basis for jurisdiction over this manner of election challenge is not HRS § 11–172, the burden of proof is different; the complaint does not need to allege that different action by Defendants would have affected the outcome of the election,[13] nor are Plaintiffs re-

---

6. *See Taomae v. Lingle*, Civ. No. 04–1–1889–10.

7. The Honorable Victoria S. Marks presided.

8. Lois Perrin, American Civil Liberties Union, argued for the Plaintiffs. Also present for the Plaintiffs was Earle A. Partington. Mark J. Bennett, Attorney General, State of Hawai'i, argued for Defendants. Also present for Defendants was Charleen M. Aina, Deputy Attorney General.

9. Because this is an original proceeding, there is no standard of review.

10. HRS chapter 11, Part XI governs elections.

11. HRS § 602–5(6) confers the authority upon this court to "make or issue any order or writ necessary or appropriate in aid of its appellate or original jurisdiction, and in such case any justice may issue a writ or an order to show cause returnable before the supreme court."

12. HRS § 602–5(7) authorizes this court to "make and award such judgments, decrees, orders and mandates, issue such executions and

other processes, and do such other acts and take such other steps as may be necessary to carry into full effect the powers which are or shall be given to it by law ·or for the promotion of justice in matters pending before it."

13. A "typical" election challenge, which would be reviewed pursuant to the standards set forth in HRS § 11–172, would be one in which a candidate contended that the election procedure was flawed in some way as to cause that candidate to lose. HRS § 11–172 states, in pertinent part, that "[t]he complaint shall set forth any cause or causes, such as but not limited to, provable fraud, overages, or underages, *that could cause a difference in the election results.*" (Emphasis added.) *See, e.g., Akaka v. Yoshina*, 84 Hawai'i 383, 384–85, 935 P.2d 98, 99–100 (1997) (candidates for Office of Hawaiian Affairs Trustee positions contended that ballots were mishandled). This court has determined that such suits are inapposite to cases like the one at bar, in which a constitutional amendment that has been presented to the voters at a general election is disputed. *Watland*, 104 Hawai'i at 134–35, 85 P.3d at 1085–86.

quired to prove such an allegation in order to prevail. *Watland,* 104 Hawai'i at 134–36, 85 P.3d at 1085–87.

■ This court has stated that constitutional amendments that have been approved by the voters "will be upheld unless they can be shown to be invalid beyond a reasonable doubt." *Kahalekai,* 60 Haw. at 331, 590 P.2d at 549 (citing *Keenan v. Price,* 68 Idaho 423, 195 P.2d 662 (1948); *City of Raton v. Sproule,* 78 N.M. 138, 429 P.2d 336 (1967)). "The burden of showing this invalidity is upon the party challenging the results of the election." *Watland,* 104 Hawai'i at 133, 85 P.3d at 1084. "[T]he infraction should be plain, clear, manifest, and unmistakable." *Blair v. Cayetano,* 73 Haw. 536, 541–42, 836 P.2d 1066, 1069 (1992) (brackets in original) (quoting *Schwab v. Ariyoshi,* 58 Haw. 25, 31, 564 P.2d 135, 139 (1977)). Thus, Plaintiffs must prove beyond a reasonable doubt that the process by which H.B. 2789, H.D. 1, S.D. 1 was passed in the legislature was a "plain, clear, manifest, and unmistakable" violation of article III, sections 14 and 15 and article XVII, section 3 of the Hawai'i Constitution. *State ex rel. Bronster v. Yoshina,* 84 Hawai'i 179, 186, 932 P.2d 316, 323 (1997).

■ In this regard, constitutional provisions regarding constitutional amendments are not directory, but mandatory, and "'strict observance of every substantial requirement is essential to the validity of the proposed amendment.'" *Blair,* 73 Haw. at 543, 836 P.2d at 1070 (quoting *Andrews v. Governor of Maryland,* 294 Md. 285, 449 A.2d 1144, 1146 (1982) (citations omitted)). Therefore, if Plaintiffs can show that even one "substantial requirement" was violated, they have satisfied their burden of proof; Plaintiffs need not demonstrate that the results of the election would have been different if the requirement had been fulfilled.

## V.

■ "In interpreting constitutional provisions, the general rule is that, if the words used in a constitutional provision ... are clear and unambiguous, they are to be construed as they are written." *Watland,* 104 Hawai'i at 139, 85 P.3d at 1090 (internal quotation marks, citations and brackets omitted). We believe the words in article III,

sections 14 and 15 and article XVII, section 3 are clear and unambiguous. Because these provisions regulate the procedure by which the constitution is amended, failure to strictly comply with the requirements of these sections invalidates a proposed constitutional amendment. The plain and unambiguous language of article XVII, section 3 requires that a constitutional amendment first be proposed by the legislature. The clear and unambiguous language of article III, section 15 requires that a proposal for a constitutional amendment be subjected to three readings on different days in each house.

We conclude that H.B. 2789, H.D. 1, S.D. 1 did not conform to the procedures set forth in the Hawai'i Constitution for two reasons. First, the proposed amendment was not titled as a constitutional amendment pursuant to article XVII. Second, the proposal to amend the constitution was not subjected to three readings in each house as article XVII, section 3 requires.

## VI.

As indicated before, article XVII, section 3 provides that "[t]he legislature may *propose amendments to the constitution* [.]" (Emphasis added.) Given its ordinary meaning, "propose" means "to put forward for consideration." *Merriam Webster's Collegiate Dictionary* 936 (10th ed.1993). Under article XVII, section 3, such proposals must be "adopt[ed] ... in the manner required for legislation." One of the requirements for the passage of legislation is that the subject of the bill "*shall* be expressed in its title." Haw. Const. art. III, § 14 (emphasis added). The term "shall" is ordinarily used in a mandatory sense. *See Coon v. City & County of Honolulu,* 98 Hawai'i 233, 256, 47 P.3d 348, 371 (2002) ("The use of the word 'shall' in the context of [Revised Ordinances of Honolulu § 38–5.2's] award of 'actual out-of-pocket expenses' is clearly mandatory."); *Schefke v. Reliable Collection Agency, Ltd.,* 96 Hawai'i 408, 451–52, 32 P.3d 52, 95–96 (2001) ("HRS §§ 388–11(c) and 378–5 ... mandate an award of attorney's fees to the prevailing party by employing the word 'shall'[.]").

However, as noted in this case, the title of H.B. 2789 was "A Bill for an Act Relating to Sexual Assault" and did not refer to a proposal to amend the constitution. Hence, despite the mandates in article XVII, section 3 and in article III, section 14, the title did not announce that a proposal for an amendment to the constitution·was the subject of the bill. In the absence of an indication in the title that the bill set forth an amendment to be made to the constitution, the constitutional amendment was not properly "put forward for consideration," *i.e., "propose[d]"* by the legislature within the meaning of that term as employed in article XVII, section 3.

While the title given H.B. 2789 upon its introduction was sufficient under article III, section 14 with respect to a statutory amendment, such a title was insufficient to "propose" that the constitution be amended by H.B. 2789, H.D. 1, S.D. 1, the final form of the bill. The bill failed, therefore, to meet the first requirement of article XVII, section 3, that is, that the legislature "propose" the amendment as one to the constitution.

## VII.

Manifestly, there is no more effective or adequate manner in which the legislature can fulfill its obligation to "propose" to the electorate changes to the constitution than by designating its action in the title of the bill as required under article XVII, section 3 and article III, section 14. It is essential that constitutional amendments be proposed as such before they are considered in the legislature and presented to the public for approval because "[p]rovisions of our Constitution are of a higher order of law than statutes. Constitutional provisions are more basic and permanent than statutes." *Gafford v. Pemberton*, 409 So.2d 1367, 1373 (Ala. 1982) (per curiam). It is imperative then that in the case of constitutional amendments the purpose of a bill's title to "apprise the people of proposed matters of legislation[,]" *Schwab*, 58 Haw. at 30–31, 564 P.2d at 139, is effectuated.

To that end, it is noteworthy that the other three constitutional amendments proposed by the legislature and ratified by the electorate in 2004 stated in their titles that the bills were proposed constitutional amendments, thus adhering to the directives of article XVII, section 3 and article III, section 14. The bills were entitled, "A Bill for an Act *Proposing* an Amendment to Article I of the Constitution of the State of Hawaii," "A Bill for an Act *Proposing* Amendments to Article I, Section 14, of the Hawaii Constitution," and "A Bill for an Act *Proposing* an Amendment to Article I of the Constitution of the State of Hawaii." (Emphases added.) The titles of those bills provided the public with clear notice concerning the nature and content of the legislation and, thus, alerted the citizenry to the opportunity to legislatively comment and debate those bills in a meaningful way. These bills attracted fifty, thirty-four, and twenty pieces of written testimony, respectively.

In contrast, H.B. 2789, H.D. 1, S.D. 1 attracted only seven pieces of written testimony. Two of those pieces were virtually identical submissions from the Attorney General suggesting that the legislature add a constitutional amendment giving itself the power to enact the statutory amendment. Two other pieces of testimony were essentially verbatim submissions from the Office of the Public Defender conveying its belief that the statutory amendment did not remedy significantly the flaw upon which the decision in *Rabago* was based.

As counsel confirmed in oral argument, because of the manner in which the subject bill was amended and adopted, the general public had *no* opportunity to provide comment in the legislature on the proposed amendment itself. The procedure followed hereunder eliminated "the mature deliberation, amendment and compromise usually necessary to produce sound and lasting legislation" contemplated by the framers.[14] Stand. Comm. Rep. No. 47 in 1 Proceedings

---

14. The Committee on Revision, Amendments, Initiative, Referendum and Recall stated, "All good citizens must, to some extent, neglect their everyday affairs, their work and their business, to take part in these important processes[, elections and legislative sessions], whether it be to advo-

cate good candidates or good laws, or oppose bad ones. This responsibility they must cheerfully accept as the price of liberty and efficient government." Stand. Comm. Rep. No. 47 in 1 Proceedings of the Constitutional Convention of Hawaii 1950 at 183.

of the Constitutional Convention of Hawaii 1950 at 184. The words "in the manner required for legislation" in article XVII, section 3 instruct that, at the least, as to a constitutional amendment, the framers intended that there must be public participation as ordinarily contemplated in the case of statutory legislation. *See infra* discussion.

## VIII.

Furthermore, based on the constitutional amendments passed in 2004, it appears that the legislature's current practice *is* to designate in the title that a bill is a constitutional amendment. *See supra.* "[W]hile ... past practice is not conclusively determinative in interpreting the text of the constitution, it does factor into our analysis." *Bronster*, 84 Hawai'i at 190, 932 P.2d at 327. The predominate practice of the legislature has been to entitle proposed constitutional amendments with some version of the phrase, "Proposing an amendment to Article     of the Constitution of Hawai'i."

As mentioned previously, the titles of the bills proposing the other three amendments ratified in the 2004 general election expressly referred to constitutional amendments. *See* text *supra* at 252–53, 118 P.3d at 1195–1196. In the 1996, 1998, 2000, and 2002 general elections, ten proposed constitutional amendments presented to the voters for ratification were also entitled as proposed constitutional amendments through the legislative process.[15] Thus, based on our analysis of the constitutional requirements set forth in articles III and XVII, including the predominate legislative practice, we conclude that the failure to designate H.B. 2789, H.D. 1, S.D. 1 as a constitutional amendment in its title was a plain, clear, manifest, and unmistakable violation of the constitution beyond a reasonable doubt.

## IX.

Defendants argue that there is no constitutional provision which expressly directs the legislature to entitle constitutional amend-

**15.** Between 1996 and 2002, ten constitutional amendments presented to the electorate for ratification were entitled as follows: "A Bill for an Act Proposing an Amendment to Article VII, Section 11, of the Constitution of the State of Hawaii[,]" 1996 Haw. Sess. L. at 981, "A Bill for An Act Proposing an Amendment to Article VII, Section 12, of the Hawaii Constitution, to Allow the use of Revenue Bonds for the Funding of a State Property Insurance Program Providing Hurricane Insurance Coverage[,]" *id.* at 982, "A Bill for an Act Proposing an Amendment to Article VII, Section 3, of the Constitution, to Provide for the Appointment of a Tax Review Commission Every Ten Years[,]" 1997 Haw. Sess. L. at 1246, "A Bill for an Act Proposing a Constitutional Amendment Relating to Marriage[,]" *id.,* "A Bill for an Act Proposing an Amendment to Article X, Section 6 of the Hawaii Constitution to Provide the University of Hawaii with Autonomy in All Matters Related to the University[,]" 2000 Haw. Sess. L. at 1178, "A Bill for an Act Proposing an Amendment to Article VII, Section 3, of the State Constitution to Provide for the Appointment of a Tax Review Commission Every Ten Years[,]" *id.* at 1179, "A Bill for an Act Proposing an Amendment to Article IV, Sections 7 and 8, of the Constitution of the State of Hawaii, to Stagger Senate Terms After Reapportionment[,]" 2000 Haw. Sess. L. Act 1 at 1 (2d Special Sess.), "A Bill for an Act Proposing an Amendment to Article III, Section 6 of the Hawaii Constitution, to Change the Eligibility to Serve as a Member of the Senate or House of Representatives[,]" 2002 Haw. Sess. L. at 1021, and "A Bill for an Act Proposing Amendments to Article VII, Section

12, and Article X, Section 1 of the Constitution of the State of Hawaii to Authorize the State to Issue Special Purpose Revenue Bonds and use the Proceeds from the Bonds to Assist Not–For–Profit Private Elementary Schools, Secondary Schools, Colleges, and Universities." *Id.* at 1022. The only amendment not entitled as a proposal between 1996 and 2002 was an amendment proposed in 1996 which was entitled "A Bill for an Act Relating to School Construction Projects." 1996 Haw. Sess. L. at 980.

Of these ten proposed amendments between 1996 and 2002, the relevant House and Senate Journals are unclear as to whether two of these proposed amendments were given three readings in both houses of the legislature. As to the two said amendments, the respective legislative journals indicate that they were given second and third readings in the house where the amendment originated. *See 2000 Senate Journal 1531* (S.B. 539, "A Bill for an Act Proposing an Amendment to Article X, Section 6, of the Hawaii Constitution, to Provide the University of Hawaii with Autonomy in All Matters Related to the University") and 2002 House Journal 1849 (H.B. No. 1012, "A Bill for an Act Proposing an Amendment to Article III, Section 6 of the Hawaii Constitution, to Change the Eligibility to Serve as A Member of the Senate or House of Representatives"). There is no indication of when these proposed amendments were introduced or when they received their first readings in the Senate or House of Representatives, respectively.

ments in a certain way. They rely on the language of article III, section 14 that the title of the bill must "express" the single subject of the bill, in this case, sexual assault. While that interpretation of article III, section 14 is appropriate when applied to ordinary legislation, it must be remembered that article XVII specifically governs constitutional amendments.

Under article III, sections 14 and 15, statutes are amended in the manner required for ordinary legislation. A statutory amendment must be introduced, read three times in each house, and passed by a simple majority. Haw. Const. art. III, §§ 13[16]–15. In contrast, under article XVII, section 3, while the legislature has the authority to propose a constitutional amendment in a single session, the legislature cannot make that amendment law. In the single session process, a constitutional amendment can only be effected if it is proposed as such, given three readings in each house, and meets the other requirements set forth in article XVII. Haw. Const. art. XVII, § 3. The critical distinctions between "enacting" ordinary legislation pursuant to article III, section 14 and "proposing" a constitutional amendment under article XVII are exemplified by the fact that constitutional amendments are governed by a separate article.

Defendants cite to *Schwab* to support their proposition that the title of H.B. 2789, H.D. 1, S.D. 1 "embraced" the subject matter of the entire bill. They rely on the proposition that the single subject requirement means that a bill's parts are "so connected and related to each other either logically or in popular understanding as to be parts of or germane" to the subject expressed in the title. *Schwab*, 58 Haw. at 32–33, 564 P.2d at 140. However, as presaged above, *Schwab* is distinguishable from the case at bar. In *Schwab*, this court considered the requirements embodied in article III alone, *id.* at 30–39, 564 P.2d at 139–44; in this case, we construe the requirements of article III as incorporated in the specific and separate provisions of article XVII. There was no constitutional amendment at issue in *Schwab*; therefore, it is not dispositive in the case at bar.

## X.

Additionally, in considering H.B. 2789, H.D. 1, S.D. 1, the legislature failed to satisfy the requirement set forth in article XVII, section 3, that a proposed constitutional amendment be passed "in the manner required for legislation" because the constitutional amendment, *see* §§ 1 and 2 of the bill, did not receive three readings in each house as required by article III, section 15. The plain reading of article XVII, section 3 requires that a proposed constitutional amendment advance through the processes set forth in article III, section 15, including the requirement that "[n]o bill shall become law unless it shall pass *three readings in each house* on separate days." Haw. Const. art. III, § 15 (emphasis added).[17]

In this instance, the constitutional amendment included in H.B. 2789, H.D. 1, S.D. 1 received only three readings *in total.* As previously stated, the bill in its final form, including the constitutional amendment, was read and passed in the Senate on March 31, 2004 and on April 2, 2004, and read and passed in the House of Representatives only once, on April 26, 2004. This was a patent violation of article III, section 15. Allowing constitutional amendments to be approved in this manner precludes the public from participating in the legislative process with respect to constitutional amendments as discussed previously, and also undermines the intent of the framers that the constitution not be "easily amended." Comment by Delegate Fuku-

---

16. Article III, section 13 of the Hawai'i Constitution, entitled "Quorum; Compulsory Attendance," states, in pertinent part, "the final passage of a bill in each house shall require the vote of a majority of all the members to which such house is entitled, taken by ayes and nos and entered upon its journal."

17. Defendants' contention in oral argument that the term "propose[d]" in article XVII refers to a

proposal of the constitutional amendment *to the public* is incorrect inasmuch as article XVII sets forth one of the prerequisites that must be followed *prior* to any submission to the public for its vote. By incorporating the procedure for legislation set forth in article III, section 15 the framers plainly directed that any proposed constitutional amendment would be subject to the reading procedure.

shima, in 2 Proceedings of the Constitutional Convention of Hawaii 1950 at 744.

In the Committee Debates at the Constitutional Convention of 1950, Delegate Fukushima explained that the process for amending the State Constitution was to ensure that "the Constitution should not be easily amended and ..., at the same time, the procedure of amending the Constitution should not be rendered practically prohibitive or impossible." *Id.* The Committee on Revision, Amendments, Initiative, Referendum and Recall instructed, "This framework [*i.e.,* the Federal Constitution], *which cannot be changed except with great effort and deliberation,* produces an enduring stability not found in other types of government." Stand. Comm. Rep. No. 47 in 1 Proceedings of the Constitutional Convention of Hawaii 1950 at 183 (emphasis added).

As part of this framework, the Committee noted that

[t]he system of checks and balances between departments [which] tends to prevent excesses, abuses and usurpations, and the short but certain tenure of the legislators and governor insures that, by and large, the government will be responsive to the true and enduring dictates and desires of the people, but will not necessarily follow the dangerous and often mistaken dictates of storms of hasty, temporary and changeable public emotion.

*Id.* With respect to the legislature and in evident consonance with such a framework, the Committee indicated that

[o]ne of the necessary features of laws adopted by the legislature is the *necessity for three readings* and the opportunity for *full debate in the open* ... during the course of which the purposes of the measures, and their meaning, scope and probable effect, and the validity of the alleged facts and arguments given in their support can be fully examined and, if false or unsound, can be exposed, *before* any action of consequence is taken thereon.

*Id.* at 184 (some emphasis in original and some emphases added). These premises confirm that the three reading requirement in each house must be afforded to a proposed constitutional amendment.

The three-reading requirement not only provides the opportunity for full debate; it also ensures that each house of the legislature has given sufficient consideration to the effect of the bill. *Schwegmann Bros. v. Calvert Distillers Corp.,* 341 U.S. 384, 396, 71 S.Ct. 745, 95 L.Ed. 1035 (1951) (Jackson, J. concurring) (concluding that the three-reading requirement in the United States Constitution is intended to "make sure that each House knows what it is passing and passes what it wants"). Thus, the three-reading requirement serves a critical purpose in ensuring that constitutional amendments are adopted only after deliberate forethought. On the other hand, requiring a constitutional amendment to be read and passed three times in each house (*i.e.,* "in the manner required for legislation") would not render the process for amending the constitution "practically prohibitive or impossible[.]" Comment by Delegate Fukushima in 2 Proceedings of the Constitutional Convention of Hawaii 1950 at 744. For as this case demonstrates, three of the four constitutional amendments adopted in the 2004 legislative session were passed in this manner. *See supra.* In light of the foregoing reasons, we also conclude that the failure to give the proposed constitutional amendment three readings in each house on separate days was a plain, clear, manifest, and unmistakable violation of the constitution beyond a reasonable doubt.

## XI.

Because the requirements of article XVII, section 3 and article III, sections 14 and 15, were not fulfilled, as discussed above, H.B. 2789, H.D. 1, S.D. 1 was not constitutionally adopted. Based on the foregoing, we grant Plaintiffs' request for (1) a declaration that H.B. 2789, H.D. 1, S.D. 1 was invalidly passed and should not have been signed by Governor Lingle or presented to the voters in the 2004 general election and (2) an injunction prohibiting Defendants from allowing H.B. 2789, H.D. 1, S.D. 1 to be printed or published as part of the Hawai'i Constitution.

## XII.

Defendants contend that: (1) any bright line rule adopted by this court regarding the

requirements of articles III and XVII "apply only to bills or amendments the Legislature considers in future legislative sessions" (emphasis omitted); (2) invalidation of H.B. 2789, H.D. 1, S.D. 1 will violate the separation of powers doctrine established in article IV, section 4 of the United States Constitution; and (3) voiding the amendment would violate the fourteenth amendment to the United States Constitution.

### A.

As to its first argument, Defendants contend that any other course of action would be unfair because the legislature and the voters did not have a bright line rule to follow regarding the application of article XVII, section 3 and its relationship to article III, section 14. Defendants rely on the holding in *Jenkins v. Cades Schutte Fleming & Wright*, 76 Hawai'i 115, 869 P.2d 1334 (1994) (per curiam), in which this court established a bright line rule regarding the strict application of Hawai'i Rules of Civil Procedure (HRCP) Rule 58. In that case, we noted,

rigid enforcement of HRCP 58 and application of our holdings in this opinion to cases currently pending before this court and the Intermediate Court of Appeals would work an unnecessary hardship on those who have relied upon our prior case law. We will not rigidly apply the Rule 58 requirement of a separate judgment or our holdings in this opinion to appeals currently pending. However, for all appeals from circuit courts filed after March 31, 1994, we will enforce strict compliance with the separate document requirement of HRCP 58.

*Id.* at 119, 869 P.2d at 1338. Defendants argue that it would be wrong to invalidate a constitutional amendment which received nearly two-thirds of the votes in the general election. However, in oral argument, counsel acknowledged that the vote margin has no legal significance in the determination of this case. The legislature has the opportunity to propose identical constitutional and statutory amendments in compliance with the Constitution. Thus, the legislature will suffer no permanent hardship comparable to the threat of losing the opportunity to appeal an adverse ruling of the court that was present in *Jenkins*.

Furthermore, the requirements of HRCP Rule 58 were not plain and clear before the decision in *Jenkins*. *Id.* On the other hand, the requirements for adopting a constitutional amendment are established in the plain and unambiguous language of articles III and XVII; the legislature fulfilled the requirements of article XVII, section 3 and article III, sections 14 and 15 with regard to the three other proposed constitutional amendments that were presented to and ratified by the voters in the 2004 general election; and the framers of the constitution manifestly contemplated public participation in the legislative procedure that was precluded in this case. *See* discussion *supra*.

### B.

■■ As to the second argument, Defendants assert that if this court invalidates H.B. 2789, H.D. 1, S.D. 1, we will intrude upon the province of the legislature, a coequal branch of government, thus violating the separation of powers doctrine. The separation of powers doctrine is embodied in the Guarantee Clause, article IV, section 4 of the United States Constitution, which reads:

The United States shall guarantee to every State in this Union a Republican Form of Government, and shall protect each of them against Invasion; and on Application of the Legislature, or of the Executive (when the Legislature cannot be convened) against domestic Violence.

Questions arising under the Guarantee Clause are nonjusticiable because they are "political, not judicial, in character, and thus are for the consideration of the Congress and not the courts." *Ohio v. Akron Metro. Park Dist. for Summit County*, 281 U.S. 74, 79–80, 50 S.Ct. 228, 74 L.Ed. 710 (1930) (citations omitted).

Defendants' arguments that this is a political, and not judicial, question are unconvincing. It is well settled that the courts, not the legislature, are solely vested with the responsibility to determine whether a constitutional amendment has been validly adopted.

"The power to ascertain the validity of changes in the constitution resides in the courts, and they have, with practical uniformity, exercised the authority to deter-

mine the validity of proposal, submission, or ratification of change in the organic law. *The question of the validity of the adoption of an amendment to the constitution is a judicial and not a political question."* *Kahalekai,* 60 Haw. at 330–31, 590 P.2d at 548–49 (quoting 16 Am.Jur.2d, Constitutional Law, § 43) (emphasis added). Thus, this court does not improperly encroach upon the legislature's power by invalidating H.B. 2789, H.D. 1, S.D. 1.

## C.

■ As to the third argument, Defendants contend that invalidation of H.B. 2789, H.D. 1, S.D. 1 would violate the fourteenth amendment to the United States Constitution, which provides in pertinent part that "[n]o state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law[.]" However, Defendants present no discernible argument regarding the alleged violation of this amendment. This court may "disregard [a] particular contention" if the appellant "makes no discernible argument in support of that position[.]" *Norton v. Admin. Dir. of the Court,* 80 Hawai'i 197, 200, 908 P.2d 545, 548 (1995) (citing Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(7)), *recon. denied,* 80 Hawai'i 357, 910 P.2d 128 (1996). *See* HRAP 28(b)(7) ("Points not argued may be deemed waived.").

The entirety of Defendants' argument that invalidation of H.B. 2789, H.D. 1, S.D. 1

would violate the fourteenth amendment is this: "For similar reasons tied to notions of fundamental fairness [referring to the argument that invalidation would violate the Guarantee Clause, *supra* ], we also respectfully submit that invalidating the amendment would also violate the due process clause contained in the [fourteenth a]mendment of the United States Constitution." This argument does not contain any reasoning, supported by citations to case law or authority to constitute a discernible argument; thus we decline to decide the issue.

## XIII.

Plaintiffs' prayer for relief requested that this court award them attorneys fees and costs because "this case presents a novel issue of constitutional significance." We order that any request for attorneys' fees and costs be submitted in accordance with the procedure set forth in HRAP Rule 39(d) (2005).[18] *See also* HRS § 11–175 (1993).[19]

## XIV.

Therefore, IT IS HEREBY ORDERED that Plaintiffs' requests for (1) a declaration that H.B. 2789, H.D.1, S.D.1 is invalid, (2) and an injunction prohibiting Defendants from printing or publishing Question 1 as part of the Hawai'i Constitution are granted and judgment thereon shall be entered upon proper submission by Plaintiffs. It is further ordered that Plaintiffs shall submit their

---

**18.** HRAP Rule 39(d), entitled "Request for fees and costs; objections," states, in pertinent part:

(1) A party who desires an award of attorney's fees or costs shall request them by submitting an itemized and verified bill of fees or costs, together with a statement of authority for each category of items.... Requests for non-indigent attorney's fees and costs allowed by statute or contract shall be submitted in a form that substantially complies with Form 8 in the Appendix of Forms.

(2) A request for fees and costs must be filed with the appellate clerk, with proof of service, no later than 14 days after entry of judgment. An untimely request for fees and costs may be denied.... If oral argument is had or additional work is performed thereafter, the attorney may submit a request for additional fees and costs.

(3) Objections to requests for fees and costs must be filed with the appellate clerk, with proof of service, within 10 days after service on the party against whom the fees and costs are to be taxed unless the time is extended by the appellate court. A reply to the objections must be filed with the appellate clerk, with proof of service, within 7 days after service of the objections on the initiating party.

**19.** HRS § 11–175, entitled "Powers of supreme court; costs," provides:

The supreme court may compel the attendance of witnesses, punish contempts, and do whatsoever else may be necessary fully to determine the proceedings, and enforce its decrees therein. The court may make such special rules as it may find necessary or proper. The costs shall be as provided by the supreme court by rule.

claim for attorneys' fees and costs pursuant to HRAP Rule 39(d).

