**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-20-0000736**
**17-JUN-2021**
**07:49 AM**
**Dkt. 99 SO**

NO. CAAP-20-0000736

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI‘I

IN THE INTEREST OF CH

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(CASE NO.  FC-S No. 19-00064)

SUMMARY DISPOSITION ORDER
(By:  Ginoza, Chief Judge, Leonard and Nakasone, JJ.)

Respondent-Appellant Father appeals from the Order Terminating Parental Rights (**Termination Order**), entered November 13, 2020, in the Family Court of the First Circuit (**Family Court**).[1]  In the Termination Order, Father's parental rights to his child (**Child**) were terminated and a permanent plan with the goal of adoption was approved.  On December 30, 2020, the Family Court entered Findings of Fact and Conclusions of Law (**FOFs and COLs**) regarding the Termination Order.

---

[1]     The Honorable Jessi L.K. Hall presided.

On appeal, Father challenges FOFs 98, 105,[2] 106, 108, and 110-113,[3] and contends that (1) there was not clear and convincing evidence that "it was not reasonably foreseeable" that Father "would become willing and able to provide a safe family home within a reasonable period of time;" (2) Petitioner-Appellee State of Hawaiʻi, Department of Human Services (**DHS**) "did not exert reasonable nor active efforts to reunify Father with [Child];" and (3) the Permanent Plan (**Permanent Plan**) "was not in [Child's] best interest."

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Father's contentions as follows, and affirm.

Hawaii Revised Statutes (**HRS**) § 587A-33(a) (2018) governs the termination of parental rights and provides in relevant part as follows:

> (a) At a termination of parental rights hearing, the court shall determine whether there exists clear and convincing evidence that:
>
> (1) A child's parent whose rights are subject to termination is not presently willing and able to provide the parent's child with a safe family home, even with the assistance of a service plan;
>
> (2) It is not reasonably foreseeable that the child's parent whose rights are subject to termination will become willing and able to provide the child with a safe family home, even with the assistance of a service plan, within a reasonable period of time, which shall not exceed two years from the child's date of entry into foster care; [and]

---

[2] Father did not present argument to support his challenge to FOF 105, and we do not address it. FOF 105 stated: "Father is not presently willing and able to provide the Minor with a safe family home, even with the assistance of a service plan."

[3] FOF 110 does not make a factual finding but merely introduces FOFs 111-113, stating that the Family Court "makes the following findings regarding the Permanent Plan dated January 28, 2020." FOF 110 is not clearly erroneous.

2

> (3) The proposed permanent plan is in the best interests of the child.

"Generally, the family court possesses wide discretion in making its decisions and those decisions will not be set aside unless there is a manifest abuse of discretion." In re Doe, 95 Hawai'i 183, 189, 20 P.3d 616, 622 (2001) (citations, quotation marks, and ellipsis omitted).

> [T]he family court's determinations . . . with respect to (1) whether a child's parent is willing and able to provide a safe family home for the child and (2) whether it is reasonably foreseeable that a child's parent will become willing and able to provide a safe family home within a reasonable period of time present mixed questions of law and fact; thus, inasmuch as the family court's determinations in this regard are dependant upon the facts and circumstances of each case, they are reviewed on appeal under the clearly erroneous standard. Likewise, the family court's determination of what is or is not in a child's best interests is reviewed on appeal for clear error.
>
> Moreover, the family court is given much leeway in its examination of the reports concerning a child's care, custody, and welfare, and its conclusions in this regard, if supported by the record and not clearly erroneous, must stand on appeal.

Id. at 190, 20 P.3d at 623 (citations, quotation marks, and brackets omitted).

> The family court's FOFs are reviewed on appeal under the clearly erroneous standard. A FOF is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made. Substantial evidence is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

Id. (citations, quotation marks, and ellipsis omitted). Unchallenged findings of fact are binding on appeal. In re Doe, 99 Hawai'i 522, 538, 57 P.3d 447, 463 (2002).

(1) Father primarily contends that FOF 106 was not supported by clear and convincing evidence. FOF 106 states: "It is not reasonably foreseeable that Father will become willing and able to provide a safe family home, even with the assistance of a service plan, within a reasonable period of time not to exceed two (2) years from the Minor's date of entry into foster care on March 13, 2019." In his argument that there was no substantial evidence in the record that he was not willing and able to provide Child a safe family home within a reasonable time period, Father specifically claims that: DHS and the Guardian ad Litem (**GAL**) were looking to move towards "family supervision" with Father, but they "changed their tune" when Father relocated to Louisiana; and there was "no substantial evidence in the record" that Father "posed a risk of harm" to Child.

This contention is without merit. The record reflects substantial evidence that it was not reasonably foreseeable that Father would become willing and able to provide Child a safe family home and to do so within a reasonable period of time. See Doe, 95 Hawaiʻi at 189, 20 P.3d at 622. The following evidence supported the Family Court's conclusion: the October 23, 2019 Closing Report from the service provider, indicates that Father voluntarily terminated services upon relocating to the mainland in October 2019, and prior to relocating, Father attended only eight of fifteen visits with Child and six of twelve outreach sessions; the DHS Social Worker testified at trial that Father permanently relocated to Louisiana without first notifying DHS, while Child remained in Hawaiʻi, see FOFs 82, 99-100; Father declined the DHS Social Worker's February 14, 2020 offer to refer services and a courtesy social worker in Louisiana, and he did not request another referral until September 2020, see FOF 85; Father "stipulated to participate in each of the court ordered

4

service plans," FOF 61, but he failed to complete his services and visits as set forth in the service plans, see FOFs 73-76, 80, 89-90; Father failed to call or appear for any virtual visits with Child in October 2020; and Father did not submit paperwork for his home in Louisiana under the Interstate Compact on the Placement of Children (**ICPC**), but instead indicated his preference was for Child's paternal grandmother (**Grandmother**) in Alabama to adopt Child, see FOFs 16c, 103, 104.

As to Father's claim that there was no substantial evidence in the record that he "posed a risk of harm" to Child, the Family Court found that "[o]n May 16, 2019, Father stipulated to the adjudication of the harms alleged in the Petition," see FOF 36; and Father did not move to reconsider the May 16, 2019 Orders Concerning Child Protective Act, which stated that "there is an adequate basis to sustain the [P]etition in that [Child's] physical or psychological health or welfare has been harmed or is subject to threatened harm by the acts or omissions" of Father.

Thus, there was substantial evidence in the record supporting the Family Court's conclusion that Father would not be willing and able to provide Child a safe family home within a reasonable time period, even with the assistance of a service plan. FOF 106 is not clearly erroneous, and Father's first contention is without merit. See Doe, 95 Hawaiʻi at 189, 20 P.3d at 622.

(2) Father next contends that he was not given a reasonable opportunity to reunify with Child because DHS did not make reasonable or active efforts to do so, and that DHS failed to "identify necessary, appropriate, and reasonable services to address the identified safety issues/problems and failed to make appropriate and timely referrals for these services." Father challenges FOFs 98 and 108, which state:

> 98.    Under the circumstances present in this case, Father was given every reasonable opportunity to effectuate positive changes to provide a safe family home and to reunify with the Minor.  However, Father knowingly and voluntarily relocated to Louisiana while the Minor remained in Hawaiʻi.
>
> . . . .
>
> 108.  Father's representation that the DHS did not make reasonable efforts to reunify him with the Minor is not supported by the credible evidence in the record.

Father argues that DHS failed to make reasonable efforts to reunify him with Child after he permanently relocated to Louisiana, specifically, that DHS failed to refer Father to services after he relocated to Louisiana in October 2019, until he raised the issue at the February 12, 2020 hearing; and that DHS made no referrals from October 2019 to November 2020.

FOFs 98 and 108 are supported by the DHS Social Worker's testimony that she referred Father to services while he resided in Hawaiʻi, but Father failed to complete them because he moved to the mainland; Father permanently relocated without notifying DHS, see FOFs 82 and 99-100; and she contacted Father on February 14, 2020, offering a referral for services and a courtesy social worker in Louisiana, but Father declined and did not request another referral until September 2020, see FOF 88. FOF 108 is not clearly erroneous.

The record reflects that DHS made reasonable efforts to contact Father and to refer him for services after he relocated, but Father either failed to respond or expressly declined a referral offer, see FOFs 82, 84-88, 100, which Father does not dispute on appeal:

> 82. Father permanently relocated to the state of Louisiana in late October 2019 without first informing the DHS.
>
> . . . .

84. On October 18, 2019, [DHS Social Worker] telephoned Father after learning from the PACT service provider that Father had stopped participating in services because he either had moved or was planning to move to the mainland.  Father did not answer the phone, [DHS Social Worker] left a message, and Father did not return her phone call.

85. On February 14, 2020, [DHS Social Worker] telephoned Father and was able to reach him.  [DHS Social Worker] offered to contact the social services department in New Orleans, Louisiana, but Father declined.  Father told [DHS Social Worker] that he knew the consequences of not completing the family service plan.

86. On March 10, 2020, [DHS Social Worker] telephoned Father to discuss the permanent plan, Father did not answer the phone, and [DHS Social Worker] left a message.

87. Father testified that he never spoke to [DHS Social Worker] about engaging in services while in Louisiana and denied telling her that he did not want a courtesy worker.  Father's testimony on these points was not credible.[4]

88. Father did not request to be referred to services or for a courtesy social worker [from the time he left Hawaiʻi] until September 2020.
. . . .

100. Father did not contact the DHS after he left the State of Hawaiʻi.  Rather, it was [DHS Social Worker] who initiated contact with Father.  Without notice DHS was unable to timely transfer services.

(Emphases added.)  Father's argument in this regard is without merit.

Father also argues that COVID-19 "affected Father's ability to travel" to participate at the trial, and he was denied his due process right to a fair trial when he was "den[ied] assistance . . . to allow him to appear in-person for trial."

---

[4]     "[I]t is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of the evidence; this is the province of the trial judge."  State v. Gella, 92 Hawaiʻi 135, 142, 988 P.2d 200, 207 (1999).

Father presents no legal authority for his contention that DHS should pay travel expenses for a parent who voluntarily left the jurisdiction to appear for trial, nor does he present any argument showing that he was denied an opportunity to be heard or to present testimony and other evidence at trial. See Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 28(b)(7); Taomae v. Lingle, 108 Hawaiʻi 245, 257, 118 P.3d 1188, 1200 (2005) (declining to address the appellant's due process argument as it did not "contain any reasoning, supported by citations to case law or authority to constitute a discernible argument"). Regardless, the record reflects that Father attended and testified at the trial via Webex, and the Family Court found that Father's counsel "competently" and "zealously represented Father" at the trial. See FOF 6. Father's contention in this regard is without merit.

(3) Father's last contention is that terminating his parental rights and supporting a permanent plan for adoption was not in Child's best interests because "[c]hildren deserve a meaningful opportunity to be reunited with their parents in a safe family home," and DHS failed to give Father that opportunity when it stopped its reasonable efforts to reunify Father and Child and failed to complete an ICPC on Grandmother's home, which "would have aided in reunification for Father." Father challenges FOFs 111-113 which state:

> 111. The goal of the Permanent Plan is permanent custody of the Minor with eventual adoption as it is in the best interest of the Minor, given the Minor's young age, the Minor's need for permanency, and the statutory presumption in favor of children being promptly and permanently placed with responsible and competent substitute parents and families in safe and secure homes; the presumption being given greater weight the younger the Minor's age upon the date of entry into foster care. In this case, the Minor was 11 days old on March 13, 2019, her date of entry into foster care.

> 112. The Minor's GAL stated her agreement that the Permanent Plan dated January 28, 2020 with the ultimate goal of adoption is in the Minor's best interest.
>
> 113. [DHS social worker] testified and the Court finds that the Permanent Plan dated January 28, 2020, with the ultimate goal of adoption is in the Minor's best interest.

FOF 111 comes directly from the language of the Permanent Plan and HRS Chapter 587A. Specifically, the Permanent Plan identifies a goal of termination of parental rights[5] and adoption by Grandmother, with adoption by Foster Parents as an alternative, and HRS § 587A-33(a)(3) requires the Family Court to:

> (A) Presume that it is in the best interests of the child to be promptly and permanently placed with responsible and competent substitute parents and family in a safe and secure home; and
>
> (B) Give greater weight to the presumption that the permanent plan is in the child's best interest, the younger the child is upon the child's date of entry into foster care . . . .

Thus, FOF 111 is not clearly erroneous.

FOF 112 is supported by the GAL's argument at trial that termination of parental rights and adoption is in Child's best interests, specifically: that "it's presumed to be in the best interest of the child to be promptly and permanently placed with responsible and competent substitute parents and family in a safe and secure home," and Child "has that" with Foster Parents; that greater weight should be given to this presumption of the best interest of the child being promptly and permanently placed in a responsible and competent home "when a child is younger upon the date of the child's entry into foster care," and that Child has been with Foster Parents since shortly after her birth; and

---

[5] HRS § 587A-4 (2018) defines "Permanent custody" as "the legal status created by order of the court after the termination of parental rights as set forth in this chapter."

that the Family Court should grant the motion to terminate parental rights. FOF 113 is supported by the DHS Social Worker's testimony that DHS's position is that the Permanent Plan is in Child's best interest. Thus, FOFs 112 and 113 are not clearly erroneous.

The record reflects that DHS and the Family Court provided Father a meaningful opportunity to reunite with Child; however, he failed to demonstrate that he could provide a safe family home. See FOF 6. The Family Court found that the ICPC for placement with Grandmother was denied due to Grandmother's decision not to complete the ICPC process. See FOF 103. Therefore, the record does not support Father's assertion that placement with Grandmother would have aided in reunification, where placement with Grandmother was never approved.

Moreover, the DHS Social Worker testified that she believed the Permanent Plan was in Child's best interest, and the Permanent Plan's goal of adoption is consistent with statutory presumptions in HRS § 587A-33(a)(3)(A) and (B), which, respectively, "[p]resume that it is in the best interests of the child to be promptly and permanently placed with responsible and competent substitute parents and family in a safe and secure home" and "[g]ive greater weight to the presumption that the permanent plan is in the child's best interest, the younger the child is upon the child's date of entry into foster care." (Emphases added.) Given that Child entered into foster care when she was eleven days old, the presumption that adoption is in her best interest had greater weight under the statute. Thus, substantial evidence in the record supports the Family Court's determination that the permanent plan for adoption was in Child's best interest. Thus, Father's contention is without merit. See Doe, 95 Hawaiʻi at 189, 20 P.3d at 622.

10

Finally, we note that Father briefly asserts that FOFs 91 through 97 are in error, but he provides no particular argument as to these findings.  Based on our review of the record, these findings are not clearly erroneous.

Therefore, IT IS HEREBY ORDERED that the November 13, 2020 Order Terminating Parental Rights entered in the Family Court of the First Circuit, is affirmed.

DATED: Honolulu, Hawai'i, June 17, 2021.


On the briefs:

Crystal M. Asano
for Father-Appellant

Abigail S. Dunn Apana
Julio C. Herrera
Deputy Attorneys General
for Petitioner-Appellee

/s/ Lisa M. Ginoza
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Karen T. Nakasone
Associate Judge

11